(84 South. 559)

AMERICAN LUMBER & EXPORT CO. v. LOVE, Sheriff, et al. (7 Div. 578.)

(Court of Appeals of Alabama. Nov. 25, 1919.)

1. TRIAL ⊂⊃141—UNDISPUTED EVIDENCE ESTABLISHING CAUSE OF ACTION ENTITLES PLAINTIFF TO AFFIRMATIVE CHARGE.

Where plaintiff proved every material averment of his complaint without dispute, he was entitled to the affirmative charge.

2. CHATTEL MORTGAGES ⊂⊃136 — LIEN NOT DESTROYED BY BILL OF SALE TO MORTGAGEE.

The lien of a prior chattel mortgage is not destroyed by a subsequent bill of sale, given by the mortgagor and recorded by the mortgagee.

3. TRIAL ⊂⊃237(3) — CHARGE REQUIRING PROOF TO REASONABLE CERTAINTY IS ERRONEOUS.

A charge that the burden is on plaintiff to prove to reasonable certainty every material allegation of its complaint is erroneous, as requiring too high a degree of proof.

Appeal from Circuit Court, St. Clair County; O. A. Steele, Judge.

Action by the American Lumber & Export Company against R. D. Love, as Sheriff, and the sureties upon his official bond, for damages for the conversion of certain lumber. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Allen & Fisk, of Birmingham, for appellant.

Counsel discuss the assignments of error insisted on and treated in the opinion, but without citation of authority.

M. M. Smith, of Pell City, for appellees. No brief reached the Reporter.

BRICKEN, P. J. The statement of facts in appellant's brief is borne out by the record and is as follows:

"This is an action brought by the American Lumber & Export Company, a corporation, of Birmingham, Ala., against R. D. Love, sheriff of St. Clair county, Ala., and the American Surety Company of New York, as surety upon the sheriff's official bond, for the conversion of certain lumber described in the complaint. The evidence shows that the appellant was engaged in the wholesale lumber business in the city of Birmingham, and had had certain lumber transactions with one S. H. Wells, who operated a sawmill near Cook Springs, St. Clair county, Ala. These transactions had covered a considerable period of time, and included the taking by the appellant of a certain mortgage upon certain equipment and property of Wells.

"In September, 1914, Wells had gotten his affairs into such shape that he desired to discontinue his sawmill business, and he came to the appellant's president, Mr. Larkins, with a proposition that he reconvey his property covered by the mortgage, that he secure from the appellant certain sums of money for the payment of his labor bills, and also that the appellant pay off certain bills for him. Mr. Larkins and Wells came to terms in the matter, and it resulted in Wells selling to the appellant the lumber described in the complaint. The money agreed upon as the purchase price was paid partly to Wells in person, and partly to certain employés and certain creditors. Wells received in cash or by check to his order two sums, of $173.49 and $314, respectively. Appellant paid at his direction other sums as follows: To Carraker, $46.55 for timber; to W. F. Perrin, an employé, $34.01; to Donahue Horse & Mule Company, a creditor, $75; to Earle Bros., creditors, $120.91; to Moore & Handley Hardware Company, a creditor, $1.90 —these amounts together aggregating the purchase price agreed upon between Mr. Larkins and Mr. Wells for the lumber. The two amounts, $173.49 and $314, were paid to Wells for the express purpose of taking care of his labor.

"At the time of the sale it was agreed between Mr. Larkins and Wells that Mr. Perrin, an employé of Wells, should take charge of the lumber for the American Lumber & Export Company, and that company gave Wells shipping instructions later. Immediately after the purchase of the lumber from Wells, after the first payment therefor, and before the final payment, presumably between September 1 and September 8, 1914, appellant sent one of

its office men, Mr. Boykin, to Cook's Springs to check over the lumber, which Mr. Boykin did, and found the lumber to correspond satisfactorily with the account of it given by Wells. Mr. Boykin proceeded to sell the lumber, and succeeded in selling certain portions of it to W. B. Lawley at prices agreed upon between them. Mr. Lawley started Mr. Perrin to loading the lumber bought by him, and had gotten one or more cars of it loaded on railroad cars, when he was stopped and the lumber taken from him by the sheriff.

"The appellant offered in evidence a certain mortgage executed by Wells to appellant on June 1, 1914, conveying certain personal property described therein, and containing the following provision as to lumber: 'Also all lumber now on hand that was cut by the party of the first part at his mill, together with all other lumber that the said party of the first part may manufacture at his said sawmill for and during the period of two years from the date hereof.' Said mortgage had been duly recorded in the office of the probate judge of St. Clair county, Ala., on June 2, 1914. The reasonable market prices and values of the lumber were testified to by Mr. Larkins, Mr. Boykin, and Mr. Lawley.

"It was agreed in open court between the parties as follows:

"(a) 'That Mr. Fisk, of the law firm of Allen, Fisk & Townsend, attorneys for the plaintiff, visited Pell City shortly before the sale by the sheriff, and made a demand on Mr. Love for a release of the attachments, the demand being made on behalf of the American Lumber & Export Company, which demand was refused.'

"(b) 'That the personal property described in the complaint had been levied upon before the bringing of this suit under certain writs of attachment issued by Mr. Garrett, a justice of the peace, and that said personal property had been sold under an order of condemnation in the court of said justice of the peace as set forth in defendant's pleas; this agreement being made by reason of the loss or misplacement of the original papers by Mr. Garrett, the justice of the peace.'

"The appellees offered no oral testimony, nor any by deposition, but introduced in evidence a bill of sale executed by S. H. Wells to the American Lumber & Export Company, dated September 8, 1914, recorded in the office of the judge of probate of St. Clair county on September 12, 1914; this bill of sale conveying to the appellant certain personal property therein mentioned, which personal property was a part of the personal property described in the mortgage executed by Wells to the appellant in the mortgage dated June 1, 1914, the bill of sale making no mention of the lumber then on hand or to be manufactured, such as was mentioned in the mortgage of June 1st."

[1] The first assignment of error is based upon the refusal of the court to give the affirmative charge requested in writing by the plaintiff. In our opinion, the plaintiff proved every material averment of the complaint, without dispute, and was therefore entitled to the affirmative charge requested.

[2] The second assignment of error is based upon the refusal of the court to give the following charge, requested in writing by plaintiff:

"The court charges you, gentlemen of the jury, that as a matter of law the bill of sale, dated September 8, 1914, offered in evidence, did not discharge or release the lien of the mortgage dated June 1, 1914, offered in evidence."

In our opinion this charge asserted a correct proposition of law and should have been given. We are unable to see upon what ground it could be held that the execution of the bill of sale destroyed the lien of the mortgage or in any manner affected same.

The court erred in the portion of its oral charge to the jury excepted to by plaintiff, as follows:

"The plaintiff cannot recover by reason of the mortgage. If plaintiff had a mortgage upon the output of the mill, when it placed upon record this bill of sale, this bill of sale was notice to the world that the mortgage was canceled, and he could not recover because of the mortgage, and, if he recovers at all, he must recover by reason of the sale of the property to plaintiff."

We are unable to see upon what theory the court based this portion of its charge, and we have not been aided by brief for appellee to show upon what ground or theory it was based.

The plaintiff being entitled to the affirmative charge, the court erred in overruling plaintiff's motion for new trial.

[3] The court erred in giving the following charge, requested in writing by defendant:

"The court charges the jury that the burden of proof is on the plaintiff in this case to prove to reasonable certainty every material allegation of its complaint, and, unless the jury find that the plaintiff has met such burden by a preponderance of the evidence, then the verdict must be for the defendant."

This charge required too high a degree of proof by plaintiff. Carter v. Fulgham, 134 Ala. 238, 32 South. 684; Eagle Iron Co. v. Baugh, 147 Ala. 613, 41 South. 663. The measure of proof required is to the reasonable satisfaction of the jury.

For the error indicated, the judgment of the lower court is reversed, and the cause remanded.

Reversed and remanded.