(100 So. 623)

**AMERICAN LUMBER & EXPORT CO. v. LOVE et al. (7 Div. 945.)**

(Court of Appeals of Alabama. May 20, 1924. Rehearing Denied June 10, 1924.)

**1. Trial ☞141—Undisputed evidence establishing cause of action entitled plaintiff to affirmative charge.**

Where, by undisputed evidence, plaintiff proved every material allegation in its complaint, and there was no competent evidence in support of plea of estoppel, plaintiff was entitled to the affirmative charge.

**2. Principal and agent ☞124(1)—Refusal of charges that agent had no authority to make alleged representations held error.**

Where plaintiff's evidence was that its agent had authority only to demand from sher-

iff release of lumber levied on in attachment and no apparent authority or course of dealing was shown, it was error to refuse charges that agent had no 'authority to make representations to sheriff as to what claim plaintiff had or as to holding by plaintiff a bill of sale.

### 3. Principal and agent ☞22(1)—Declarations of agent not received to establish agency.

Authority of agent is primarily established by party creating agency, and declarations of agent as to authority or its extent cannot be received in evidence against principal.

### 4. Courts ☞91(1)—Decisions of appellate courts binding on lower courts.

Decisions of appellate courts are binding on all lower courts and must govern proceedings therein.

Appeal from Circuit Court, St. Clair County; O. A. Steele, Judge.

Action in trover by the American Lumber & Export Company against R. D. Love and the American Surety Company of New York. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Charges 4 and 7, refused to plaintiff, are as follows:

"(4) The court charges you, gentlemen of the jury, that under the evidence in this case, Mr. Brenton K. Fisk had no authority to make any representations to Mr. Love or any one else as to what claim the plaintiff had or relied upon as to said lumber, and the defendant R. D. Love had no right to rely upon any alleged representations of Mr. Fisk."

"(7) The court charges you, gentlemen of the jury, that if you believe from the evidence that the authority 'of Brenton K. Fisk was limited to demanding the release of the lumber by R. D. Love, sheriff, then he had no authority to make any statement as to the holding by plaintiff of a bill of sale by plaintiff, and plaintiff was not bound by any such statement."

Vassar L. Allen, of Birmingham, for appellant.

Counsel argue for error in the judgment and cite the former appeal in the cause. American Lbr. & Export Co. v. Love, 17 Ala. App. 251, 84 South. 559.

Frank B. Embry and M. M. Smith, both of Pell City, for appellees.

Counsel argue the questions raised, but without citing authorities.

BRICKEN, P. J. The following state of facts in appellant's brief appears to be borne out by the record in this case:

#### Statement of Facts.

"The foundation of this action is an alleged wrongful taking or conversion of a quantity of lumber belonging to the American Lumber & Export Company (hereinafter called the lumber company), appellant, by Russell D. Love, as sheriff of St. Clair county, Ala., and the American Surety Company, as his surety upon his official bond.

"It seems that the official bond of the sheriff was dated November 22, 1910, and was duly approved by the probate judge of that county on November 23, 1910.

"The action was begun on June 3, 1915, in the circuit court of St. Clair county, Pell City division, and the cause was tried before Hon. O. A. Steele and a jury.

"There have been two trials of the cause, each resulting in a verdict for the sheriff and his surety. The verdict and judgment in the first trial were appealed to the Court of Appeals of Alabama, and a reversal of the judgment was had upon such appeal. 17 Ala. App. 251, 84 South. 559.

"This appeal is by the plaintiff from an adverse verdict and judgment upon the second trial.

"The facts shown upon the trial were these:

"In the early part of September, 1914, and for so'me time prior thereto, one S. H. Wells was operating a sawmill near Cook Springs, St. Clair county, and had from time to time sold his lumber to the lumber company, and had executed to the lumber company a mortgage upon his equipment and upon certain timber rights, for the purchase of which the lumber company had advanced money to him.

"As may be remembered, following the outbreak of the World War, a period of depression set in, and Wells, the sawmill operator, became disgusted with his business. He came in to see Mr. Larkins, the president of the lumber company, explained the situation to him, and told him that he desired to sell to the lumber company what lumber he had on hand and quit. He gave Mr. Larkins a list of the lumber on his yards, and a price was agreed on between them for this lumber. Larkins gave him a check on account, and sent his inspector, Rhodes Boykin, out to inspect the lumber and check it on the yards. Boykin made the trip, made the check and inspection, and reported to Larkins that Wells' statement as to quantity and quality was true.

"Thereupon Larkins, for the lumber company, settled with him, giving him a check for $314 (having previously given him one on the occasion of the first visit, in the sum of $173,-49), and then paid for Wells certain merchandise accounts that Wells owed in Birmingham, the total payments amounting to $765.96, a list of such payments being set out on page 15 of the transcript. It was further testified that the amount paid for the lumber at that time was its fair and reasonable market value.

"Mr. Wells, so Mr. Larkins testified, told him that he was compelled to quit the lumber business, and that he wanted to sell the lumber to the lumber company for cash in order to pay off his bills, pay off his workers, and that he was then going out of this part of the country.

"It appears that Wells did not pay off all of his laborers, and some four or five of them sued out attachments against Wells as an absconding debtor, and the sheriff levied these attachments upon the lumber upon the yards bought by the lumber company.

"When the sale was completed, the lumber was taken charge of for the lumber company by a Mr. Perrin, a son-in-law of Wells, and

the lumber company sold, or attempted to sell, a part of the lumber to W. B. Lawley, who was in the act of loading some of it on a railroad car when the sheriff levied his attachments and frightened Lawley off, so that Lawley never got the lumber, and the delivery to him by the lumber company was not effected.

"While the lumber was held under attachment, the lumber company took up the matter with its attorneys, Messrs. Allen, Fisk & Townsend, of Birmingham, and after a conference between Mr. Larkins and Mr. Allen, senior member of the law firm, Mr. Brenton K. Fisk, a junior member, was dispatched to Pell City with instructions to demand of the sheriff the release of the attachments on the lumber. This demand by Mr. Fisk was admitted by the sheriff in answer to interrogatories.

"The sheriff refused the demand and proceeded to sell the lumber under judgments in the attachment suits, whereby all of the lumber was totally lost to the lumber company.

"In his defense, the sheriff attempted to justify under process, setting up that Wells was the owner of the lumber, and also filed a plea of estoppel, claiming that Mr. Fisk was an authorized agent of the lumber company, and that at the time of the making of the demand for the release of the lumber, Mr. Fisk told him and his attorney, Mr. M. M. Smith, that the lumber company claimed the lumber under a bill of sale from Wells; that he and Mr. Smith searched the records of the probate office for the bill of sale (which they said Mr. Fisk had told them was duly filed for record), and failed to find any lumber included in a certain bill of sale executed by Wells to the American Lumber & Export Company, conveying the property covered in the mortgage executed by Wells, it being property covered in the mortgage executed by Wells to save a foreclosure of the mortgage, and the lumber being left out of the bill of sale because it had already been bought by the lumber company for cash, as above recited. The sheriff being dead, there was no testimony, except inferential, that he relied upon the statement claimed to have been made by Mr. Fisk.

"The testimony of Mr. Larkins on this subject was that he was the executive of the lumber company; that no other officer or agent had any right or authority to empower Mr. Fisk to make any such alleged statement; that in fact Mr. Fisk was not authorized to make any such statement; and that Mr. Fisk's authority and agency were strictly limited to the making of the demand upon the sheriff for the release of the lumber.

"The trial court refused the plaintiff's (appellant's) request for the general affirmative charge, and also refused a charge to the effect that there was no evidence before the jury that Mr. Fisk was the duly authorized agent of the plaintiff to make the alleged statements to Mr. Love and Mr. Smith, to which refusals, among others, the plaintiff duly excepted."

[1] The first assignment of error is well taken in our opinion. It is based upon the refusal of the court to give the affirmative charge requested in writing by appellant, and as it appears from the undisputed evidence in this case that the plaintiff proved every material allegation in the complaint, the court should have directed a verdict as requested. There was no competent evidence in support of defendant's plea of estoppel, based upon alleged representations by Mr. Fisk.

For like reasons the second assignment of error must also be sustained.

[2] The third and fourth assignments of error are based upon the refusal by the trial court of charges numbered 4 and 7. These charges in substance set up the proposition that the representations alleged to have been made by Mr. Fisk were not binding upon the plaintiff because of a lack of authority given to Mr. Fisk, and the restriction of authority imposed upon him when he was sent to Pell City to make demand upon the sheriff.

It is evident that the plaintiff in this cause was informed by defendant's plea of the attempt by the sheriff to justify upon certain alleged representations made by Mr. Fisk, and that the plaintiff met this contention by very full and complete evidence shown in the testimony of Mr. Larkins, plaintiff's president, who gave the instructions to Mr. Fisk prior to his trip to Pell City, and who was the only source of authority for Mr. Fisk. This testimony given by Mr. Larkins is full and complete, and free from any contradictions—and to the effect that Mr. Fisk was sent to Pell City for the express and only purpose of demanding from the sheriff a release of the lumber which had been seized by the sheriff under attachment. All other authority or power upon Mr. Fisk's part was expressly denied.

[3] It is elementary, as a legal proposition, that the authority of an agent be primarily established by the party creating the agency, and any declarations of the agent as to his authority or extent of authority cannot be received in evidence against the principal. This is not a case of apparent authority upon the part of the agent for the reason that authority to make a demand upon the defendant for the release of personal property made by an attorney at law (as was admitted in this case to have been done) would not carry with it the exercise of authority of a different kind such as a representation of the source of plaintiff's title to the lumber. It nowhere appears that there had been previous dealings between Mr. Fisk, representing the plaintiff, and Mr. Love, or his attorney, Mr. M. M. Smith, so that the defendant could not rely upon an established course of conduct or dealing, and had Mr. Fisk made the representation, as to the source of the plaintiff's title to lumber sought to be charged to him, defendant would have relied upon such alleged statement at his own risk. We think the court committed error in refusing to give these charges.

There are other assignments of error, but it does not appear necessary to pass upon them, for the reason that the foregoing principles are determinative of this cause in this court.

[4] This cause, though a mere simple action of trover, has been pending in the courts for nearly ten years. On the former appeal the decision of this court, rendered nearly five years ago (17 Ala. App. 251, 84 South. 559), held that the plaintiff was entitled to recover, and that the only issue to be submitted to the jury was the question of the extent of the plaintiff's damages. Whether intentional or not, the trial court appears to have ignored or disregarded the decision of this court, and its mandate in this connection, and this the court is without authority to do. The decisions of the appellate courts of this state are binding upon all the lower courts, and must govern in the proceedings of such courts.

In the recent case of Owens v. State (Ala. App.) 99 South. 774,[1] this court gave analogous expression where the court said:

"Whatever may have been the opinion of judges of courts of inferior jurisdiction, such judges must conform their opinions expressed in the discharge of their official duty to the opinions of the Supreme Court, whose decisions are 'the last word' as to the law in this state. * * * Trial judges are the only direct contact the judicial system has with the people; it is through them the appellate courts must speak; their influence in trials by jury can hardly be overestimated, and it is through them the guaranty of 'life, liberty and the pursuit of happiness' must be preserved."

As stated, this case has been tried on two separate occasions, and upon each trial, as we have held, the plaintiff has without conflict proven every material allegation of its complaint. In each instance the court should have given the affirmative charge for plaintiff as requested. Upon another trial it appears unlikely that other issues can be injected, or that any additional or new evidence can be introduced by either party, and in the event that the evidence upon another trial of this case is substantially the same as upon the former trials, it will be the duty of the trial court to follow the decision here, thus obviating further delay in the final adjudication of this cause and the shuttling back and forth of this case between the lower court and this court.

Long and needless delays in the disposition of causes form the basis for vast public dissatisfaction and adverse criticism of courts. Moreover, by such means parties are deprived of their just rights for unreasonable length of time, and in many instances delayed and deferred justice is the equivalent of denied and defeated justice.

For the reasons stated and the errors pointed out, the judgment of the lower court is reversed, and the cause remanded.

Reversed and remanded.

