PER CURIAM.
This is an appeal from the denial of an award of an attorney fee in an insurance subrogation case.
Shelby D. Eiland sued his automobile insurer, State Farm Mutual Automobile Insurance Company, and Bridgette C. Meherin, on September 1, 2000, alleging that Meherin had “negligently caused or allowed her motor vehicle to collide with the rear of a motor vehicle occupied by Eiland,” that at the time of the accident Meherin was an underinsured driver, and that at the time of the accident State Farm had issued to him policies of insurance that included underinsured-motorist coverage. Both State Farm and Meherin answered Eiland’s complaint. Before the action was filed, Meherin’s insurance company had tendered to State Farm its policy limits of $100,000 to settle the claims against Mehe-rin. State Farm, on July 31, 2000, advanced to Eiland the $100,000 policy-limits offer pursuant to Lambert v. State Farm Mutual Automobile Insurance Co., 576 So.2d 160 (Ala.1991), in order to protect its potential subrogation interest against the tortfeasor Meherin.
On April 24, 2001, State Farm, pursuant to Lowe v. Nationwide Insurance Co., 521 So.2d 1309 (Ala.1988), moved to “opt out” of the trial proceedings, acknowledging that it would be bound by the factual determinations made by the trier of fact. Eiland opposed State Farm’s motion, arguing that its motion was “untimely and did not come within a reasonable period of time.” Eiland further argued that if the court granted State Farm’s motion to opt out, the court should enter a declaratory judgment that State Farm had “waived its subrogation claims against the co-defendant, Meherin.” On May 16, 2001, the court entered an order allowing State Farm to opt out of the proceeding.
Following a jury trial, the court, on May 24, 2001, entered a judgment in favor of Eiland for $50,000. Meherin’s liability carrier paid into the court the amount of the judgment entered against her. On June 20, 2001, Eiland moved the court to enter an order directing that the funds paid into the court be distributed and that court costs be taxed to “the appropriate defendant.” State Farm opposed the motion, arguing, in part:
“[State Farm] advanced [Meherin’s] policy limits of $100,000 to preserve sub-rogation rights against [Meherin].... The jury verdict in this case having been rendered in an amount less than the sum advanced by [State Farm], [State Farm] therefore submits that it is entitled to full reimbursement of the judgment proceeds in the amount of $50,000.”
Meherin requested that all costs be taxed against State Farm. She argued, in part,
“3. This case was tried to a jury at the insistence of [State Farm], as State Farm refused to approve the settlement agreement reached between [Eiland] and [Meherin], through her liability insurance carrier. All said costs listed on ‘Exhibit A’ were incurred by [Eiland] as a result of the actions of [State Farm] and any costs ordered to be paid by this court should be paid by State Farm.”
On July 18, 2001, the court entered an order taxing a portion of the costs to Meherin and taxing State Farm a total of *1136 $1,264.33 in costs. As it pertains to the award of an attorney fee, the court stated, in part:
“With regard to the distribution of the funds, [Eiland] raises two issues. First, [Eiland] argues that State Farm has no right of subrogation to the $50,000 and therefore it is not entitled to the money. Alternatively, [Eiland] asserts that should State Farm be entitled to the $50,000, that sum should be reduced by a reasonable attorney fee since [Ei-land’s] work generated a ‘common fund.’
“After a review of the law and entertaining the argument of counsel, this court concludes that State Farm is entitled to subrogation rights arising from the underinsured motorist benefits paid in advance on July 31, 2000, for the accident made the basis of this suit. It is well settled that subrogation is based on two equitable principles: (1) That the insured should not recover twice for a single injury; and (2) That the insurer should be reimbursed for payments it made that, in fairness, should be borne by the wrongdoer. See Aetna Casualty and Surety Co. v. Turner, 662 So.2d 237 (Ala.1995).
“The parties stipulated that [Mehe-rin], through [her] insurance carrier offered its policy limits in July of 2000. [Eiland] sought, in addition to the policy limits of [Meherin], additional damages from State Farm, his underinsured motorist carrier. State Farm would not agree to a settlement that would discharge [Meherin] and allow [Eiland] to pursue a claim against it for additional underinsured motorist benefits. However, it advanced to [Eiland] and [Eiland] accepted an amount equal to the settlement offer made by [Meherin]. In short, State Farm did that which it was obligated to do pursuant to Lambert v. State Farm Mutual, 576 So.2d 160 (Ala.1991):
“Accordingly, the court finds that State Farm has protected its subrogation rights and it is entitled to receive the $50,000 paid into the court by [Meherin],
“Because this court finds that State Farm is entitled to all of the judgment paid into court, it finds that there is no ‘common fund’ to be shared between [Eiland] and State Farm. Thus, this matter is distinguishable from [Alston v. State Farm Mutual Automobile Ins. Co.], 660 So.2d 1314 (Ala.Civ.App.1995)(‘put another way, an attorney, whose efforts result in recovery of funds in which various persons have an interest, is entitled to payment from such funds of a reasonable fee for his representation of the common interest.’).”
Eiland appeals following the denial of his postjudgment motion.
The trial court correctly held that State Farm was entitled, as a matter of law, to the entire $50,000 awarded to Eiland. The trial court also held that State Farm was not required to pay any part of Eiland’s attorney fee. It reached that result by concluding that the $50,000 judgment was not a “common fund.” The court reasoned that a common fund is one in which multiple parties share an interest and, because only one party, here State Farm, had an interest in the $50,000 judgment, the judgment was, therefore, not a “common fund.” The trial court’s reasoning is at odds with the theory underlying the “common-fund” doctrine.
The common-fund doctrine in insurance-subrogation cases is based on the equitable notion that, because an insurer is entitled to share, to the extent of its subro-gation interest, in any recovery its insured achieves against a tortfeasor, the insurer should bear a proportionate share of the *1137 burden of achieving that recovery — including a pro rata share of the insured’s attorney fee. See generally Johnny Parker, The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation, 31 Ind. L.Rev. 313, 320-25 (1998); Right of Attorney for Holder of Property Insurance to Fee Insurer’s Share of Recovery from Tortfeasor, 2 A.L.R.3d 1441 (1965).
“[T]he primary purpose of the [common-fund] doctrine is universally accepted as one which:
“ ‘provides that when a party through active litigation creates, reserves or increases a fund, others sharing in the fund must bear a portion of the litigation costs including reasonable attorney fees. The doctrine is employed to spread the cost of litigation among all beneficiaries so that the active beneficiary is not forced to bear the burden alone and the “stranger” (i.e., passive) beneficiaries do not receive their benefits at no cost to themselves.’ ”
31 Ind. L.Rev. at 321 (quoting Means v. Montana Power Co., 191 Mont. 395, 403, 625 P.2d 32, 37 (1981)) (footnote omitted). Perhaps a “common fund” is better conceptualized as a recovery in which more than one party has, at the outset of the controversy, a potential interest.
In this case, the insurer (State Farm) took no active part in the litigation between its insured (Eiland) and the tort-feasor (Meherin). Instead, State Farm relied on the efforts of Eiland’s attorney to protect its subrogation interest. State Farm was a passive beneficiary 'of the $50,000 judgment recovered through the efforts of Eiland’s attorney. The fact that State Farm was the only beneficiary of the $50,000 judgment does not mean the common-fund doctrine does not come into play; it means that State Farm’s pro rata share of Eiland’s attorney fee is 100 percent. It stands to reason that if an insurance company must pay a fee when its insured shares in the recovery, then it should pay even more of the fee (in fact, all of the fee — rather than none of the fee), when its insured does not share in the recovery.
The trial court’s reasoning — that whenever the insured is awarded a judgment against the tortfeasor for less than the amount its insurer has advanced by “buying out” the tortfeasor’s settlement offer, there’ is no “cómnlon fund” and, therefore, no obligation on the part of the insurer to share in paying the insured’s attorney fee — produces a “manifestly unjust” result. See Mathews v. Bankers Life & Cas. Co., 690 F.Supp. 984, 987 (M.D.Ala.1988). In Mathews, Chief Judge Hobbs, writing for the federal district court for the Middle District of Alabama, stated:
“[T]he attorney [for the insured] bears the risk of no fee if his efforts at recovery fail, but where he effects a recovery it is only fair that the insurance company pay a reasonable attorney fee on its part of the recovery. How in the name of fairness can it be said that the injured insured should pay a fee not only on his recovery but also on the recovery of the insurance company?
“This Court simply does not believe that such a rule is the law in Alabama or that the Supreme Court of Alabama would fashion such a rule.”
690 F.Supp. at 987-88 (emphasis added). According to one commentator, the Mathews court
“recognized the unfair impact that a [rule absolving the insurer from the payment of any part of its insured’s attorney fee] might have where the client’s recovery was less than, equal to, or slightly more than the amount owed the insurer. Under any of these circumstances the client would receive little if anything and still owe an attorney fee, *1138 while the insurer received full reimbursement at no cost.”
The Common Fund, 31 Ind. L.Rev. at 829 (footnote omitted).
Eiland contends that the trial court erred in distinguishing this case from Alston v. State Farm Mutual Automobile Insurance Co., 660 So.2d 1314 (Ala.Civ.App.1995), and that State Farm should be required to pay a pro rata share of attorney fees based on the common-fund doctrine. We agree.
Initially, we note that an attorney fee is recoverable only when authorized by statute, when provided for in a contract, or by special equity, such as in a proceeding where the efforts of an attorney create a fund out of which the fee may be paid. Mitchell v. Huntsville Hosp., 598 So.2d 1358 (Ala.1992). In Alston, the tortfeasor offered to settle for its $20,000 policy limits and State Farm, the plaintiffs uninsured-motorist carrier, advanced that amount to the plaintiff. The jury returned a $26,574 verdict for the plaintiff. The trial court denied the plaintiffs request to require State Farm to pay a portion of his attorney fee. Alston argued on appeal that the $20,000 advanced to him by State Farm in order to preserve its subrogation rights constitutes a fund; that the efforts of his attorney in litigating the case led to State Farm’s recovery of the fund; and, therefore, that State Farm should be required to pay his attorney fee, because State Farm directly benefitted from his attorney’s representation.
In Alston, this court applied the “special equity” exception to the general rule that an attorney fee is not recoverable unless the attorney’s efforts have created a common fund. This court explained the requirements for applying the common-fund doctrine:
“ ‘As a general rule, the application of the “common fund” doctrine depends upon at least two requirements. There must be a “fund” from which to compensate the attorney, and the attorney’s services must benefit that fund. In addition, the benefit rendered must be a direct benefit, either to the fund or the party to be charged with the fee.’ ”
Alston, 660 So.2d at 1315, quoting Henley & Clarke v. Blue Cross-Blue Shield of Alabama, 434 So.2d 274, 276 (Ala.Civ.App.1983). This court further stated:
“The common fund doctrine is ‘an equitable concept that one person who assumes the risks and expense of litigation and has thereby secured, augmented or preserved property or a fund of money in which others are entitled to share, is due a contribution toward such expense from those sharing according to their interest.’ Blue Cross & Blue Shield of Alabama v. Freeman, 447 So.2d 757, 758 (Ala.Civ.App.1983). This court established the application of the common fund doctrine in subrogation cases:
“ ‘The rule is that where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiffs action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney’s fees. Put another way, an attorney, whose efforts result in recovery of funds in which various persons have an interest, is entitled to payment from such funds of a reasonable fee for his representation of the common interest....’
“Id., at 759 (emphasis added). ‘The “common fund” doctrine does not require a person (insurer) to pay for the costs incurred by another person (insured) in creating a “common fund,” if that person (insurer) has expended his own substantial costs to create the “common fund.”
*1139 “... ‘[A] mere appearance as an interve-nor by an insurer for the purpose of securing a conditional judgment for its subrogation claim against the amount recovered by its insured does not aid or assist in the recovery of the common fund.’ ”
Alston, 660 So.2d at 1315-16 (some citations omitted).
In reversing the trial court, this court noted that State Farm did not expend a substantial cost on the litigation and did not participate in the trial of the case; rather, “State Farm relied on Alston’s attorney to generate the benefits that it received from the common fund. Therefore, State Farm [was] obligated to pay its pro rata share of the cost of litigation.” Alston, 660 So.2d at 1316.
The result in the present case should be no different from the result in Alston. Here, there is no evidence indicating that State Farm expended any substantial cost of the litigation — in fact, State Farm chose to opt out of the trial proceedings. The fact that the Alston plaintiff realized a $6,574 recovery and Eiland, the plaintiff here, realized no recovery is immaterial when, in both cases, the plaintiff had at the outset of the litigation an interest in the potential recovery and the plaintiffs insurer received a benefit from the plaintiffs attorney.
Accordingly, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
THOMPSON, J., dissents.