On January 27, 2000, Nancy W. Thompson and her husband John Michael Thompson sued Michael Miller, alleging that Miller had negligently or wantonly caused his vehicle to collide with the vehicle occupied by the Thompsons, thereby causing Mrs. Thompson to suffer personal injuries; Mr. Thompson's claim was a derivative claim alleging a loss of consortium. The Thompsons also sued State Farm Mutual Automobile Insurance Company, alleging that Miller was an underinsured motorist and that State Farm had issued them a policy of insurance that included underinsured-motorist ("UIM") coverage.
On September 7, 2000, Progressive Specialty Insurance Company, Miller's automobile liability insurer, offered to settle the case for the policy limit of $20,000. State Farm did not consent to the settlement, and it advanced the Thompsons $20,000, in compliance with the procedure established in Lambert v. State Farm Mutual Automobile Insurance Co.,576 So.2d 160 (Ala. 1991). On March 8, 2001, State Farm moved to "opt out" of the trial proceedings, pursuant to Lowe v. Nationwide InsuranceCo., 521 So.2d 1309 (Ala. 1988); the trial court granted the motion. The case proceeded to trial. The jury rendered a verdict for Mrs. Thompson on her personal-injury claim and awarded her $10,000. The jury rendered a verdict for Miller on Mr. Thompson's derivative claim.
Mrs. Thompson filed a posttrial motion to tax costs — including deposition expenses and expert-witness fees — amounting to $1,159.50 to Miller. Miller filed an objection to Thompson's motion. Miller had previously filed a "Motion to Allocate Attorney's Fees and Expenses," requesting the court to tax "all expenses and attorney's fees from September 7, 2000, to State Farm, the uninsured-motorist carrier for [Thompson]."
The trial court entered a judgment that, among other things, taxed costs of $1,159.50 to Miller. The judgment states, in pertinent part:
 "Michael Miller personally incurred costs in the amount of $465.45 for attending trial of this cause, and also incurred extensive attorney's fees and costs for the preparation and trial of this case to a jury. Defendant Miller argues that State Farm required him to try this cause by buying out the settlement which he had reached with the Plaintiff in the amount of $20,000.00, pursuant to the procedure set out in Lambert v. State Farm, 576 So.2d 160 (Ala. 1991). Miller further argues that it is unfair and inequitable to require him to bear the cost of attorney's fees and expenses in connection with the trial of this case after State Farm exercised its option to opt out, and bought out the settlement. This Court sympathizes with the position of Defendant Michael Miller, and agrees that attorney's fees and expenses of trial are substantial and burdensome where Defendant's carrier had tendered its policy limits before trial. Defendant Miller argues that State Farm should pay his attorney's fees and costs because of the buyout, and the Court recognizes the validity of that position. This issue appears to be a question of first impression. However, Lambert, supra, does not provide for allocation of attorney's fees as urged by Defendant Miller and this Court, therefore, declines to award attorney's fees and costs of trial against State Farm because of the lack of any *Page 1232 
controlling authority on this issue. Said Motion is hereby DENIED, and Miller's Motion seeking reimbursement of his personal expenses of attending trial in the amount of $465.45, is hereby DENIED.
 "The Court notes that Miller's policy, a Mississippi policy, provided Mississippi minimum limits of $10,000.00, which became the Alabama minimum limits of $20,000.00 pursuant to the Alabama Motor Vehicle Safety-Responsibility Act. Miller's liability insurance carrier recognized this obligation, and tendered its policy limit of $20,000.00. [T]o require Miller's carrier to double its available coverage, as well as bear the cost of attorney fees and expenses of attending Court, after tendering its limits to settle the case, creates a windfall to State Farm and a harsh, undue burden on the primary carrier. However, present Alabama law allows this result and Lambert, supra, does not address this issue."
Miller argues that, when a UIM carrier refuses to consent to a settlement between its insured and the underinsured tortfeasor, buys out the proposed settlement, and opts out of the proceedings, the UIM carrier forces to trial two parties who were willing to settle the case. He contends that the UIM carrier should, therefore, bear the expense of the trial, including attorney fees and costs. Miller maintains that the procedure established in Lambert "creates an inequity by omission," in that it does not specify how attorney fees and costs should be allocated among the plaintiff, the defendant, and the UIM carrier after the carrier's buyout of the defendant's settlement offer.
 I. Attorney Fees
Miller was not ordered to pay Mrs. Thompson's attorney fee. Therefore, he does not have standing to assert that State Farm should pay, or share in the payment of, Mrs. Thompson's attorney fee. That would have been a matter for Mrs. Thompson to assert, see Eiland v. Meherin, [Ms. 2001219, June 14, 2002] ___ So.2d ___ (Ala.Civ.App. 2002).
 "As a general rule, `a litigant may not claim standing to assert the rights of a third party.' Jersey Shore Medical Center-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 417 A.2d 1003 (1980). A party lacks standing to invoke the power of the court in his behalf in the absence of `a concrete stake in the outcome of the court's decision.' Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 937 (Ala. 1983)."
Ex parte Izundu, 568 So.2d 771, 772-73 (Ala. 1990). See also NationwideProp. Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372-73
(Ala. 2000) (in holding that building contractors who were defendants in a subrogation action had no standing to assert that the insurer had no right of subrogation because the insured had not been "made whole," the court stated that "`the only party with standing to object to the insurer's lack of payment is the insured'") (quoting Economy Fire Cas. Co. v. Goar, 564 So.2d 867, 868 (Ala. 1990)).
Miller requested the trial court to order State Farm to pay his attorney fee. The trial court correctly denied Miller's request. The general rule is that a party may recover attorney fees when "authorized by statute, when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney create a fund out of which fees may be paid." Eagerton v. Williams, 433 So.2d 436, 450 (Ala. 1983). There is no statutory authorization for awarding Miller an attorney fee from State Farm; there is no contract between Miller or his attorney and State Farm that provides for an attorney fee, and there is no "special equity" exception that applies. *Page 1233 
 II. Allocation of Costs
Miller was ordered to pay Mrs. Thompson's costs. He, therefore, does have standing to assert that those costs were not properly taxed to him but, instead, should have been taxed to State Farm. Rule 54(d), Ala.R.Civ.P., states, in pertinent part:
 "Except when express provision therefor is made in a statute, costs shall be allowed as of course to the prevailing party unless the court otherwise directs. . . ."
The taxation of costs under Rule 54(d) rests in the discretion of the trial court, and its decision will not be reversed in the absence of a clear abuse of discretion. See Garrett v. Whatley, 694 So.2d 1390
(Ala.Civ.App. 1997).
Miller argues that, because Mrs. Thompson obtained a verdict that was less favorable than his pretrial offer to her, she was not the "prevailing party" for purposes of taxing costs under Rule 54(d). We disagree. As to Miller, Mrs. Thompson was the prevailing party because the jury rendered a verdict in her favor and the trial court entered a judgment on that verdict. See generally C. Wright et al., FederalPractice Procedure § 2667 (3d ed. 1998).
Miller's argument implies that the principle underlying the "offer-of-judgment rule" found in Rule 68, Ala.R.Civ.P., should operate here. Rule 68 states, in pertinent part:
 "At any time more than fifteen (15) days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within ten (10) days after the service of the offer, the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer."
(Emphasis added.) The principle underlying Rule 68 cannot fairly be used to allocate costs to a UIM carrier in a Lambert buy-out situation because that principle is incompatible with Lambert. Rule 68 expresses a general prosettlement policy. Alabama's Rule 68 is substantially the same as Rule68, Fed.R.Civ.P. The United States Supreme Court, discussing Federal Rule 68, has stated: "The plain purpose of Rule 68 is to encourage settlement and avoid litigation." Marek v. Chesny, 473 U.S. 1, 5 (1985). Lambert, on the other hand, expressly condones, under certain circumstances, an antisettlement outlook, which our supreme court explained was necessary in order to
 "protect the underinsured motorist insurance carrier's subrogation rights against the tort-feasor, as well as to protect the carrier against the possibility of collusion between its insured and the tort-feasor's liability insurer at the carrier's expense."
Lambert v. State Farm Mut. Auto. Ins. Co., 576 So.2d at 167.
Rule 68 encourages a plaintiff to assess his injuries realistically and gives him a disincentive to overestimate the value of his case. Similarly, Lambert requires that a UIM carrier undertake a good-faith investigation of its insured's *Page 1234 
claim before it decides whether to consent to a proposed settlement between its insured and the alleged underinsured motorist. Lambert, however, expressly validates an antisettlement stance by a UIM carrier who, after a careful investigation, assesses its insured's claim at less than the alleged underinsured motorist's liability limits. When, as in the present case, a jury renders a verdict for the insured that is less than the alleged UIM's settlement offer, then it would be anomalous to penalize the carrier for a correct assessment of the claim by taxing it with costs. In short, the principle underlying the cost-taxing provision of Rule 68 is incompatible with Lambert.
Miller also argues that, because Mrs. Thompson was required to reimburse to State Farm the amount of the verdict, she had no net recovery, and, for that reason, she was not the prevailing party. In support of that argument, Miller cites Government Employees InsuranceCo. v. Brewton, 538 So.2d 1375 (Fla.Dist.Ct.App. 1989).
In Brewton, the insured settled with the tortfeasor for $10,000, the limits of the tortfeasor's automobile liability policy, and he then sued his own UIM carrier for UIM benefits. A jury awarded the insured $7500 in damages. The trial court entered a judgment for that amount, permitted the UIM carrier to set off the prior recovery of $10,000, and awarded the insured costs as the prevailing party. The Florida appellate court stated the issue as follows:
 "The question is whether [the insureds] could or should be considered as the prevailing party in a suit against their own carrier where [UIM] coverage is not activated by an amount of damages exceeding the threshold. An affirmative finding on this question is necessary to support the award in their favor for costs and attorney's fees."
538 So.2d at 1377 (emphasis added). Answering the question in the negative, the Florida court held:
 "[O]nly an award which activates the [UIM] coverage would qualify [the insureds] as prevailing parties . . . . Thus an award of $10,001.00 or greater would be required before [the insureds] could be viewed as `prevailing' over their [UIM] carrier."
Id. (emphasis added).
The holding in Brewton does not apply here because the Thompsons' action was not tried against State Farm, the UIM carrier, but against Miller, the underinsured motorist. Most jurisdictions that have considered the issue have concluded that one does not lose his "prevailing-party" status because his recovery is subject to various setoffs or credits. See, e.g., Crockett v. State Farm Fire Cas.Co., 849 F.2d 1369, 1372 (11th Cir. 1988) (stating that "[j]udgment was entered in favor of Crockett and a setoff against the award does not change that status [as a prevailing party]"); Weeks v. City of ColoradoSprings, 928 P.2d 1346 (Colo.Ct.App. 1996) (holding that the plaintiff, in whose favor a verdict was returned against a hospital in a medical malpractice action, was entitled to costs under Rule 54(d), Colo. R. Civ. App., despite the fact that the verdict was subject to a setoff of an earlier settlement with the treating physician).
Our conclusion that Mrs. Thompson was, as to Miller, "the prevailing party" entitled to costs under Rule 54(d) does not resolve the question whether the trial court had the authority to allocate those costs to someone other than Miller, the losing party. Although costs are usually taxed to the losing party, a trial court has the discretion to allocate costs differently. See Ennis v. Kittle, 770 So.2d 1090, 1091
(Ala.Civ.App. 1999). *Page 1235 
Citing Driver v. National Security Fire Casualty Co., 658 So.2d 390
(Ala. 1995), Miller points out that the Alabama Supreme Court has approved the allocation of costs to an uninsured-motorist ("UM") carrier who has opted out of its insured's suit against the estate of the uninsured motorist. Miller contends that the trial court's refusal to allocate costs to State Farm was error.
In Driver, the supreme court held that the trial court did not abuse its discretion by allowing the UM carrier's former counsel to represent the estate of the uninsured motorist and by allocating administrator ad litem fees and expenses to the UM carrier. The court distinguished two earlier cases, Lowe v. Nationwide Insurance Co., 521 So.2d 1309 (Ala. 1988), and Ex parte Edgar, 543 So.2d 682 (Ala. 1989), on the basis that they involved underinsured-motorist coverage rather thanuninsured-motorist coverage. The court explained that, unlike a UIM carrier who opts out of the proceedings, a UM carrier who opts out may be left without a mechanism to protect its interests at trial.
 "Both Lowe and Edgar involved a situation where the defendant motorist was allegedly underinsured. In such a situation, where the defendant motorist has liability insurance but the limits may not be sufficient to fully satisfy the potential judgment against him, the defendant motorist has an attorney retained by the carrier to defend him. When the underinsured carrier is named as a defendant, and chooses to opt out of the trial of the case, there is an attorney defending the interest of the underinsured motorist. As this Court acknowledged in Lowe the underinsured motorist carrier, in opting out of the case, is essentially placing its fate in the hands of an attorney chosen by someone else. 521 So.2d at 1310.
 "A different situation is created when the defendant motorist has no liability coverage: If the uninsured motorist carrier opts out of the trial of the case and there is no defense counsel already in place to represent the defendant motorist, then there is no mechanism to protect the interests of the insurer if the defendant motorist fails to, or chooses not to, defend his case. Understanding the need for the uninsured motorist insurance carrier to protect its interests, we hold that once the carrier opts out of the trial under Lowe, it may, in its discretion, hire an attorney to represent the uninsured motorist defendant."
658 So.2d at 394-95. The Driver court taxed attorney fees and costs to the UM carrier because the carrier had requested that its former counsel be allowed to provide a defense for the uninsured motorist. Having made that request, and having benefitted from its being granted, the UM carrier was liable to pay the expenses associated with it. The Driver
court recognized the different positions of UM and UIM carriers who opt out of trial: the UM carrier's interests will be unprotected unless the uninsured motorist is represented by counsel, whereas the UIM carrier's interests will be protected by the attorney for the underinsured motorist's carrier. Because the instant appeal deals with a UIM carrier, we do not consider Driver either controlling or particularly instructive.
We hold that, because the policy underlying the Lambert buyout procedure expressly condones an antisettlement stance on the part of a UIM carrier, it would violate that policy to tax costs to a carrier who has followed Lambert and whose insured obtains a jury verdict that is less than the alleged underinsured motorist's settlement offer. The trial court obviously "sympathize[d] with" Miller's equitable arguments, but concluded that there was no *Page 1236 
legal ground upon which to rule in Miller's favor. We reach the same conclusion. The judgment of the circuit court is affirmed.
AFFIRMED.
Yates, P.J., and Pittman J., concur.
Thompson and Murdock, JJ., concur in the result.