Ex parte STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

(In re State Farm Mutual Automobile Insurance Company

v.

James Ross Pritchard, Jr.).

1141039.

Supreme Court of Alabama.

Jan. 29, 2016.

William W. Watts III of Pipes, Hudson & Watts, LLP, Mobile; and Mark R. Ul-

mer of Ulmer, Hillman & Ballard, PC, Mobile, for petitioner.

W. Lloyd Copeland and Edward P. Rowan of Taylor Martino, P.C., Mobile, for respondent.

Matthew C. McDonald of Jones Walker, Mobile, for amici curiae Alfa Mutual Insurance Company and Alfa Mutual General Insurance Company Property Casualty Insurers Association of America, in support of the petitioner.

STUART, Justice.

State Farm Mutual Automobile Insurance Company ("State Farm") petitioned this Court for certiorari review of the Court of Civil Appeals' decision affirming the trial court's judgment ordering State Farm to pay an attorney fee based on a common-fund theory for the recovery of the moneys advanced by State Farm to James Ross Pritchard, Jr., pursuant to *Lambert v. State Farm Mutual Automobile Insurance Co.,* 576 So.2d 160 (Ala. 1991). We reverse and remand.

*Facts and Procedural History*

Pritchard sued Broderick McCants, State Farm (Pritchard's uninsured/under-insured-motorist ("UIM") insurer), and others seeking damages for injuries Pritchard suffered in an automobile accident with a vehicle being operated by McCants. GEICO, McCants's insurer, offered to pay Pritchard $50,000, the limits of McCants's policy, to settle Pritchard's claim against McCants. State Farm, pursuant to *Lambert,* "bought out" GEICO by advancing to Pritchard the $50,000 limits of McCants's GEICO policy and then opted out of the litigation. The jury awarded Pritchard $400,000. Pritchard, arguing that his recovery for State Farm of the amount of the *Lambert* advance created a

common fund, moved the trial court to order State Farm to contribute $20,000[1] toward his attorney fee under the common-fund doctrine. The trial court granted Pritchard's motion; State Farm appealed, and the Court of Civil Appeals affirmed the trial court's judgment. *State Farm Mut. Auto. Ins. Co. v. Pritchard,* 207 So.3d 719 (Ala.Civ.App.2015). We granted certiorari review.

*Standard of Review*

■ "On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court." *Ex parte Toyota Motor Corp.,* 684 So.2d 132, 135 (Ala.1996). The law is well established that questions of law are reviewed de novo. *Ex parte Graham,* 702 So.2d 1215, 1221 (Ala.1997); *Ex parte State Farm Mut. Auto. Ins. Co.,* 118 So.3d 699, 704 (Ala.2012)("[W]hether the common-fund doctrine applies in a case where the facts are undisputed presents a question of law which we review de novo.").

*Discussion*

"The common-fund doctrine in insurance-subrogation cases is based on the equitable notion that, because an insurer is entitled to share, to the extent of its subrogation interest, in any recovery its insured achieves against a tortfeasor, the insurer should bear a proportionate share of the burden of achieving that recovery—including a pro rata share of the insured's attorney fee. *See generally* Johnny Parker, *The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation,* 31 Ind. L.Rev. 313, 320–25 (1998); Annot., *Right of Attorney for Holder of Property Insurance*

---

1. Pritchard and his counsel had agreed to a 40% contingency fee; $20,000 is 40% of the $50,000 Pritchard recovered from GEICO in the litigation.

to *Fee out of Insurer's Share of Recovery from Tortfeasor,* 2 A.L.R.3d 1441 (1965)."

*Government Emps. Ins. Co. v. Capulli,* 859 So.2d 1115, 1119 (Ala.Civ.App.2002).

This Court in *Lambert* created a procedure whereby an insured could settle with a tortfeasor while preserving the insured's UIM insurer's right to subrogation. We provided:

> "If the [UIM] insurance carrier wants to protect its subrogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier's insured, advance to its insured an amount equal to the tort-feasor's settlement offer."

*Lambert,* 576 So.2d at 167. In essence, the *Lambert* advance acts as a substitute for the tortfeasor's liability-insurance limits. When the insured receives the UIM insurance carrier's *Lambert* advance, the insured is guaranteed that, regardless of the outcome of the action, he will receive the liability limits of the tortfeasor's policy. Thus, the purpose of an insured's prosecution of an action against a tortfeasor following a *Lambert* advance is to determine the tortfeasor's liability and the amount of the insured's damages, which in turn sets the insured's right to UIM benefits. As we explained in *Lambert,* the objective of the *Lambert* advance is to

> "protect the [UIM] insurance carrier's subrogation rights against the tort-feasor who was responsible for the injury or death and also protect the carrier against the possibility of collusion between the tort-feasor and his liability insurer at the insurer's expense."

576 So.2d at 166.

State Farm has asked this Court to determine whether a UIM insurer's right to recover its *Lambert* advance is a form of a "subrogation right." State Farm maintains that a UIM insurer does not have a subrogation interest in the *Lambert* advance, that a common fund is not created with the recovery from the tortfeasor of a *Lambert* advance, and that a UIM insurer should not be required to pay an attorney fee for the recovery of the *Lambert* advance under the common-fund doctrine.

Although this Court has not directly addressed this issue, the Court of Civil Appeals in *Eiland v. Meherin,* 854 So.2d 1134 (Ala.Civ.App.2002), and *Alston v. State Farm Mutual Automobile Insurance Co.,* 660 So.2d 1314 (Ala.Civ.App.1995), addressed cases regarding a UIM insurer's subrogation rights in a *Lambert* advance.

In *Alston,* after the insured was injured in an automobile accident and the tortfeasor offered to settle, the insured's UIM insurer made a *Lambert* advance of $20,000, the tortfeasor's liability limits, to protect its subrogation rights. After a trial, the jury returned a verdict of $26,574 in favor of the insured. The UIM insurer paid $6,574 to the insured in satisfaction of its liability for UIM benefits. The insured moved for an attorney fee from the UIM insurer under the common-fund doctrine, arguing that the $20,000 *Lambert* advance preserved the UIM insurer's subrogation rights, that the efforts of the insured's attorney led to the UIM insurer's recovery of this fund, and that, because the UIM insurer directly benefited from the insured's attorney's representation, the UIM insurer should be required to pay the attorney fee. The trial court denied that motion. The insured appealed to the Court of Civil Appeals. On appeal, the UIM insurer agreed that it had a subrogation right to the *Lambert* advance and that the insured's recovery of the *Lambert* advance created a common fund from which it received a direct benefit. Because of the UIM insurer's concessions, the Court of Civil Appeals did not address whether a

UIM insurer had a subrogation right in the *Lambert* advance; rather, the Court of Civil Appeals held that because the UIM insurer did not expend any substantial cost on the litigation, the recovery of the *Lambert* advance created a common fund from which the UIM insurer was obligated to pay its pro rata share of an attorney fee.

In *Eiland*, the Court of Civil Appeals addressed a situation where the insured's recovery was equal to the amount of the UIM insurer's *Lambert* advance. After being injured in a automobile accident, the insured sued the tortfeasor, seeking damages in excess of the tortfeasor's policy limits. The tortfeasor's insurer offered the insured the tortfeasor's policy limits of $100,000 to settle the claims against it. The insured's UIM insurer made a *Lambert* advance in that amount to protect its subrogation rights and opted out of the litigation. The jury entered a verdict in the amount of $50,000. The tortfeasor's insurer paid the $50,000. The insured requested a common-fund payment from the UIM insurer for the insured's attorney's efforts in recovering the $50,000. The trial court denied the request. On appeal, the Court of Civil Appeals applied its holding in *Alston* and concluded that a common fund was created by the insured's recovery of a portion of the *Lambert* advance. The court noted that at the outset of the litigation the insured had an interest in the potential recovery of the *Lambert* advance and that the UIM insurer received a benefit from the insured's attorney's efforts to recover the *Lambert* advance. The court held that, because the UIM insurer received a benefit and yet expended little to no cost in the litigation, the UIM insurer had to pay its share of the insured's attorney fee.

Judge Moore, in his dissent in *State Farm v. Pritchard*, disagreed with the holdings in *Eiland*, explaining:

"In *Eiland*, this court started off with the proposition that insurance-subrogation principles apply to the recovery of a *Lambert* payment. This court stated:

" 'The common-fund doctrine *in insurance-subrogation cases* is based on the equitable notion that, because an insurer is entitled to share, *to the extent of its subrogation interest,* in any recovery its insured achieves against a tortfeasor, the insurer should bear a proportionate share of the burden of achieving that recovery—including a pro rata share of the insured's attorney fee.'

"854 So.2d at 1136–37 (emphasis added). This court then went on to state that an insured's attorney, who pursues a civil action against a tortfeasor under *Lambert*, acts, in part, 'to protect [the UIM carrier's] *subrogation interest.*' 854 So.2d at 1137 (emphasis added). However, ... in a *Lambert* situation the UIM insurer does not, by advancing funds to the insured, obtain any subrogation rights against the proceeds of the tortfeasor's automobile-liability-insurance policy. *Lambert,* itself, provides otherwise:

" ' "Underinsured motorist coverage provides compensation to the extent of the insured's injury, subject to the insured's policy limits. It is an umbrella coverage that does not require the insurer to pay to its insured the amount of the tort-feasor's bodily injury policy limits, as those limits pertain to the insured. Therefore, *the insurer has no right to subrogation insofar as the tort-feasor's limits of liability are concerned. Its right of subrogation would be for sums paid by the insurer in excess of the tort-feasor's limits of liability."* '

"*Lambert,* 576 So.2d at 165 (quoting *Hardy v. Progressive Ins. Co.,* 531 So.2d

885, 887 (Ala.1988)) (emphasis added); *see also Star Freight, Inc. v. Sheffield,* 587 So.2d 946, 955 (Ala.1991) (explaining that, under *Hardy,* 'an underinsured motorist insurance carrier had no right of subrogation as to payments that were within a tort-feasor's limits of liability, but did have a right of subrogation for sums paid by the insurer in excess of the tort-feasor's limits of liability').

"This court then holds in *Eiland* that the common-fund doctrine applies when one party, through active litigation, creates, reserves, or increases a fund 'in which more than one party has, at the outset of the controversy, *a potential interest.'* 854 So.2d at 1137 (emphasis added). However, in a *Lambert* situation, the insured has no interest, potential or otherwise, in the recovery of the tortfeasor's automobile-liability-insurance-policy limits. As explained in *River Gas Corp. v. Sutton,* 701 So.2d 35, 39 (Ala.Civ.App.1997), a *Lambert* payment acts as a substitute for the tortfeasor's automobile-liability-insurance-policy limits. The insured has already been 'guaranteed' that payment through the *Lambert* procedure. *Lambert,* 576 So.2d at 166. In a *Lambert* situation, the insured prosecutes a civil action against the tortfeasor solely to obtain UIM benefits from its own UIM insurer and additional damages against the tortfeasor. An insured must recover a judgment exceeding the *Lambert* payment in order to create a fund to which he or she has any interest at all.

"Furthermore, in *Eiland,* this court erred in considering that an insured's attorney acts for the benefit of the UIM carrier when recovering a judgment against the tortfeasor. In prosecuting a civil action against a tortfeasor, the insured is, in actuality, attempting to fix the liability of the tortfeasor and the measure of the insured's damages pri-

marily to establish the insured's right to UIM benefits, which is, obviously, directly against the interests of the UIM carrier. As our supreme court noted in *Driver v. National Security Fire & Casualty Co.,* 658 So.2d 390, 395 (Ala.1995), when a UIM insurer opts out of the litigation under *Lowe v. Nationwide Insurance Co.,* 521 So.2d 1309 (Ala.1988), as State Farm did in this case, *it is the attorney for the tortfeasor, not the attorney for the insured,* who defends the interests of the UIM carrier by acting to limit the damages awarded. *See also Ex parte Littrell,* 73 So.3d 1213 (Ala. 2011) (relying on *Driver* to hold that a UIM carrier has no right to retain additional counsel to represent a tortfeasor because its interests are protected by counsel for the tortfeasor furnished by tortfeasor's automobile-liability insurer); and *Miller v. Thompson,* 844 So.2d 1229, 1235 (Ala.Civ.App.2002) (construing *Driver* as holding that a UIM carrier's interests 'will be protected by the attorney for the underinsured motorist's carrier'). Throughout the litigation, the attorney for the insured remains in an adversarial relationship to the UIM carrier.

" '[I]f the attorney is simply acting on behalf of his or her client, and a benefit only incidentally comes to others, the attorney is not entitled to a fee from those receiving the incidental benefit.... In this regard, a benefit can be an incidental, rather than an intended, result of an attorney's efforts, if the relationship between the attorney and the "nonclient" person receiving the benefit is an adversarial one.'

"*CNA Ins. Cos. v. Johnson Galleries of Opelika, Inc.,* 639 So.2d 1355, 1359 (Ala. 1994)."

*Pritchard,* 207 So.3d at 731–33 (footnote omitted).

■ We agree with Judge Moore that the subrogation right that a UIM insurer protects by making a *Lambert* advance is its " 'right of subrogation for sums paid by the insurer in excess of the tort-feasor's limits of liability.' " *Lambert,* 576 So.2d at 165 (quoting *Hardy v. Progressive Ins. Co.,* 531 So.2d 885 (Ala.1988)). See also *Star Freight, Inc. v. Sheffield,* 587 So.2d 946, 955 (1991). The making of a *Lambert* advance does not create for a UIM insurer a right of subrogation to proceeds within a tortfeasor's liability limits. Therefore, a UIM insurer's right to recover its *Lambert* advance, which is an amount within the tortfeasor's liability limits, is not a subrogation right.

■ Moreover, because the UIM insurer has no subrogation interest in the recovery of the *Lambert* advance, the insured's recovery of the *Lambert* advance is an incidental benefit of the litigation and does not create a common fund from which the insured's attorney may be awarded fees. See *CNA Ins. Cos. v. Johnson Galleries of Opelika, Inc.,* 639 So.2d 1355, 1359 (Ala.1994) (" '[I]f the attorney is simply acting on behalf of his or her client, and a benefit only incidentally comes to others, the attorney is not entitled to a fee from those receiving the incidental benefit.' " (quoting *Mitchell v. Huntsville Hosp.,* 598 So.2d 1358, 1361 (Ala.1992))).

We are mindful of the decisions of the Court of Civil Appeals in *Eiland* and *Alston;* those decisions, however, are not binding upon this Court. See § 12–3–16, Ala.Code 1975 ("The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals, and the decisions and proceedings of such courts of appeals shall be subject to the general superintendence and control of the Supreme Court as provided by Constitutional Amendment No. 328 [now § 140, Ala. Const. 1901 (Official Recomp.) ]."). See also *American Lumber & Export Co. v. Love,* 20 Ala.App. 45, 48, 100 So. 623, 625 (1924)(recognizing that "[t]he decisions of the appellate courts of this state are binding upon all the lower courts, and must govern in the proceedings of such courts"). Our reaching the correct result in the law—that a UIM insurer's right to recover its *Lambert* advance is not a form of a "subrogation right" and, consequently, that no common fund is created when a *Lambert* advance is recovered—necessitates that this Court not follow *Eiland* and *Alston.*

Applying our determination that a UIM insurer does not have a subrogation interest in a *Lambert* advance to the facts of this case, we hold that State Farm did not have a subrogation interest in the $50,000 it advanced to Pritchard pursuant to *Lambert* and, consequently, that Pritchard's recovery from the tortfeasor of the *Lambert* advance did not create a common fund from which State Farm was required to pay its share of Pritchard's attorney fee.

*Conclusion*

Based on the foregoing, the judgment of the Court of Civil Appeals affirming the trial court's order that State Farm contribute $20,000 toward Pritchard's attorney fee for the recovery of the *Lambert* advance is reversed, and this case is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.

BOLIN, MAIN, and BRYAN, JJ., concur.

MOORE, C.J., and PARKER, MURDOCK, and SHAW, JJ., concur in the result.

740

MURDOCK, Justice (concurring in the result).

I am not persuaded that, having paid to its insured an amount equal to the policy limits of the tortfeasor's liability-insurance policy, the plaintiff's uninsured/underinsured-motorist ("UIM") insurance carrier's right to reimbursement of that amount is not properly viewed as a right of or in the nature of subrogation. Nonetheless, I concur in the result reached by the main opinion for the reason that, regardless of the extent to which the matter is properly understood as one of subrogation, the fact is that no portion of any recovery against the tortfeasor can properly be considered a "common fund."

No dollar that might be recovered in an action against the tortfeasor would be subject to a claim by more than one party. Specifically, when the UIM carrier has made a payment as provided by *Lambert v. State Farm Mutual Automobile Insurance Co.*, 576 So.2d 160 (Ala.1991), the only party with a right to the proceeds of an action against the tortfeasor up to the amount of that *Lambert* payment is the UIM carrier. Any amounts recovered in that action in excess of the amount of the *Lambert* payment (i.e., an amount in excess of the tortfeasor's liability-policy limits) but not exceeding the UIM carrier's policy limits, will belong solely to the UIM carrier as well under subrogation principles, in light of its obligation to pay to the plaintiff that amount under its UIM policy. (As is true of the earlier *Lambert* payment to the plaintiff by the UIM carrier, the plaintiff's attorney can recover any fee earned in relation to the recovery of moneys in excess of the *Lambert* payment, up to the liability limits of the UIM carrier, from the UIM payment itself.) Finally, the portion of any recovery that is in excess of both the tortfeasor's liability-policy limits and the UIM carrier's policy limits

belong solely to the plaintiff. Thus, there is no portion of the recovery in which more than one party (as between the plaintiff or plaintiffs on the one hand and the UIM carrier on the other hand) has an interest at the time of that recovery. Accordingly, I see no basis for the award of an attorney fee based on a "common-fund" theory.