ON APPLICATION FOR REHEARING
The opinion released by this Court on March 27, 1992, is withdrawn, and the following is substituted as the opinion of the Court:
J. Wilson Mitchell appeals from a judgment entered, on a stipulation of facts, in favor of Huntsville Hospital. Mitchell's complaint claimed an attorney fee from a sum paid by an insurance company to Huntsville Hospital ("the Hospital"). The Hospital counterclaimed for a declaration that its hospital lien against Mitchell's client would remain in force for any amount it was required to pay Mitchell. Mitchell's client had been a patient at the Hospital, and the insurance payment had paid the majority of her outstanding bill. In denying relief on Mitchell's complaint, the trial court also denied relief on the counterclaim.
The facts of this case are as follows: Mitchell is the attorney for Johanna Pierce, a minor, and Elizabeth Pierce Jeffreys, Pierce's mother. Johanna was injured in an automobile accident in Lawrence County *Page 1359 
and was treated for her injuries at the Hospital. She incurred a bill at the Hospital in the amount of $56,878.42. Pursuant to § 35-11-370, Ala. Code 1975, the Hospital filed and perfected a hospital lien for this amount in the Lawrence County Probate Court.
Mitchell was employed by Johanna and Mrs. Jeffreys on a one-third contingent fee basis. As their attorney, Mitchell filed a tort action against the driver of the other vehicle involved in the accident with Pierce. The stipulation of facts in this action recited that the action against the tort-feasor had been settled, but that a final judgment had not been entered and that the proceeds had not been distributed. No other facts are before us regarding that settlement, including its amount.
Because neither Johanna nor Mrs. Jeffreys paid the hospital bill, the Hospital forwarded the account to its collection attorneys, Smith Waldrop. Smith Waldrop sent several letters to Mrs. Jeffreys requesting that the account be paid in full, and eventually the account was given to the firm's telephone collectors. In December 1989, Mitchell wrote Smith 
Waldrop a letter informing them that he represented Johanna and Mrs. Jeffreys and, subsequently, Smith Waldrop dealt directly with Mitchell regarding the account. In his December 1989 letter, Mitchell stated that he would be claiming a one-third attorney fee out of any money collected as a result of his efforts regarding the account. He based his claim on the "common fund" doctrine or on the attorney's lien statute.
After investigating the possibility of health insurance coverage on Pierce, Mitchell discovered that Johanna was covered under a Connecticut General Life Insurance Company policy, a policy her father had had with his former employer. Mitchell communicated with Connecticut General on several occasions by letter and by telephone, and finally, after initially denying Johanna coverage, Connecticut General agreed to pay the claim. Mitchell then telephoned the Hospital, which sent Connecticut General copies of Johanna's hospital bills.
During Mitchell's correspondence and conversations with Connecticut General, he requested that Connecticut General send the proceeds directly to him so that he could deduct his one-third attorney fee or send one-third to him and the remaining two-thirds to the Hospital. Connecticut General responded by saying that if there was an assignment-of-benefits form it would pay the provider, but that, if there was no such form, it would pay the insured directly. There was no assignment-of-benefits form executed; however, according to the stipulation of facts, the language of the policy was inconsistent with Connecticut General's response to Mitchell's request. The parties stipulated that the policy prohibited payment directly to a minor, but provided that payment would be made to the minor's legal guardian upon request.
Several months passed after the hospital records were sent to Connecticut General, and Connecticut General had not yet paid Johanna's hospital bill. On June 8, 1990, Mitchell filed suit against Connecticut General, alleging breach of contract and bad faith failure to pay a claim. Before receiving service of the suit against it, Connecticut General sent the Hospital a check for $55,609.40, on June 22, 1990. Connecticut General was served with the summons and the complaint on June 26, 1990, and the Hospital received the check on June 28, 1990. Smith 
Waldrop, pursuant to their collection contract with the Hospital, received 32.66% of the check from Connecticut General.
On June 25, 1990, Mitchell wrote Smith Waldrop, claiming a one-third fee from the proceeds of the check from Connecticut General to the Hospital. Smith Waldrop responded on July 17, 1990, saying that they did not intend to pay Mitchell the fee that he was claiming. Mitchell filed suit against the Hospital on July 20, 1990, for the recovery of a one-third attorney fee from the proceeds of the check, based on the "common fund" theory and/or a purported attorney fee lien.
Mitchell later tendered a check to the Hospital for $1,269.02, the remaining balance due on Johanna's account; however, *Page 1360 
the check contained conditional language requiring that the hospital lien be immediately satisfied. Smith Waldrop refused to cash the check and returned it to Mitchell. When the trial court adjudicated the counterclaim, it treated it as requesting a judgment declaring that the Hospital did not have to satisfy the lien because the check for $1,269.02 was of a conditional nature and did not constitute final and complete payment of the hospital bill. The court declared that, because the check was not final, the Hospital was not required to accept it and satisfy the lien. The prayer for relief in the counterclaim in fact reads:
 "WHEREFORE, counter-plaintiff prays that this Honorable Court will enter a declaratory judgment, adjudging and decreeing as follow:
 "A. That Huntsville Hospital is not required to satisfy the . . . hospital lien, as long as litigation continues over the ownership of a portion of the proceeds received by the hospital from Connecticut General Life Insurance Company.
 "B. That the hospital lien will remain valid and will continue in full force and effect for the exact amount of any attorney's fee that might be awarded by this court to J. Wilson Mitchell from the proceeds paid to Huntsville Hospital by Connecticut General Life Insurance Company.
 "C. That the counter-defendants pay the costs of this action;
 "D. That this Honorable Court enter such other relief as is just and equitable."
Thus, if we were to reverse the judgment holding that the Hospital is not obligated to pay Mitchell an attorney fee out of the proceeds of the Connecticut General check, the issue would be presented as to whether such a payment would entitle the Hospital to recover that sum from Mitchell's client.
Mitchell argues that he is entitled to a one-third attorney fee for the work he performed that resulted in the Hospital's being paid by Connecticut General. Mitchell bases his claim on two grounds: 1) the "common fund" theory of recovery, and 2) the attorney's lien statute, § 34-3-61, Ala. Code 1975.[1]
Attorney fees are recoverable only when "authorized by statute, when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney create a fund out of which fees may be paid." Eagerton v. Williams,433 So.2d 436, 450 (Ala. 1983); Reynolds v. First Alabama Bankof Montgomery, N.A., 471 So.2d 1238, 1241 (Ala. 1985); ShelbyCounty Comm'n v. Smith, 372 So.2d 1092 (Ala. 1979). There is no statutory authorization for a court to award Mitchell an attorney fee, and there is no contract between Mitchell and the Hospital. Thus, the only basis for an exception to the general rule is the "special equity" exception.
A revealing light is cast on this case by considering what would have happened if Connecticut General had done what Mitchell requested it do and what, according to the stipulation of facts, it was contractually obligated to do: send the policy benefits to Mrs. Jeffreys as guardian for Johanna or to Mitchell as Mrs. Jeffreys' attorney. In that event, if Mitchell had deducted his fee before paying the balance of the proceeds to the Hospital, Mrs. Jeffreys would have still owed the Hospital the difference between the outstanding bill and the amount of that payment. Similarly, if Connecticut General had sent two-thirds of the benefits to the Hospital and one-third of the benefits *Page 1361 
to Mitchell, the amount due to the Hospital would have been decreased only by the amount it received. In either event, the hospital lien would remain in effect for the balance due. See Ala. Code 1975, § 35-11-370; Guin v. Carraway Methodist MedicalCenter, 583 So.2d 1317 (Ala. 1991).
In attempting to receive a portion of the Connecticut General insurance proceeds in payment of his fee, Mitchell did not name Connecticut General as a defendant, so there is no issue before us regarding the allegedly wrongful payment directly to the Hospital in spite of the absence of an assignment of benefits. Mitchell did move to add Smith Waldrop as defendants, but the trial court denied the motion, and no issue is raised as to that ruling. Mitchell's clients, one of whom is a minor, were not parties to this action. Thus, we make no judgment as to what a trial court could properly do if it had all the parties before it and a request was made for an adjustment of all the equities.
The parties and the trial court, and this Court on its original consideration of this appeal, focused on the cases ofDay v. Ramada Inn South, 527 So.2d 130, 132 (Ala.Civ.App. 1987); and Henley Clarke v. Blue Cross-Blue Shield ofAlabama, 434 So.2d 274, 276 (Ala.Civ.App. 1983), which are factually similar to this case. The Court of Civil Appeals in those cases addressed arguments that fees should be allowed on the theory that the attorney's efforts had created a "common fund."
The "common fund" exception is merely a particular instance of the "special equity" exception to the rule that attorney fees may not ordinarily be recovered. See, e.g., Eagerton v.Williams, supra; Reynolds v. First Alabama Bank, supra. Another statement of the exception was given in Mills v. ElectricAuto-Lite Co., 396 U.S. 375, 391, 90 S.Ct. 616, 24 L.Ed.2d 593
(1970), and quoted in Brown v. State, 565 So.2d 585, 593 (Ala. 1990): "A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself." Mitchell did not seek recovery from Connecticut General on behalf of a group that included his clients and the Hospital; he acted simply on behalf of his clients. As the trial court observed, Mitchell and his clients were in an adversarial relationship with the Hospital.
A similar point was made in Lewis v. Railroad RetirementBoard, 256 Ala. 430, 54 So.2d 777 (1951), cert. denied,343 U.S. 919, 72 S.Ct. 677, 96 L.Ed. 1333 (1952). Lewis, an injured railroad employee, obtained benefits from the Railroad Retirement Board. Lewis's attorneys later recovered a judgment against the employer railroad. The railroad interpleaded a portion of that judgment into court because the Board claimed a right to reimbursement, and Lewis's attorneys attempted to recover a fee from that portion. In affirming the denial of such a fee, the Court discussed several cases regarding the exception that allows fees paid to an attorney who renders services for the common benefit of a group. 256 Ala. at 435,54 So.2d at 781-82. Referring to Lewis as the complainant and to his attorneys as intervenors, the Court said:
 "The services rendered by the attorneys in the suit in which the judgment against the railroad company was procured were services rendered in behalf of a client, the complainant in the cause, and his individual interest under a contract made only between complainant and intervenors. It was not a service rendered in behalf of the Railroad Retirement Board, although it resulted incidentally in benefit to the Railroad Retirement Board. As a result of the views which we have here expressed, the allowance of a fee cannot be sustained on a theory of services rendered for the common benefit of all the parties."
256 Ala. at 436, 54 So.2d at 782.
Mitchell cites First National Bank of Hamilton v. Estes,479 So.2d 1275 (Ala.Civ.App. 1985), in support of his argument. In that case, the Bank had financed Estes's purchase of a truck, and the Bank had a security interest in the truck. Estes obtained insurance from St. Paul Fire and Marine Insurance Company. The truck *Page 1362 
was destroyed by fire, and Estes brought an action against St. Paul. The Bank intervened, claiming under its note against Estes and claiming the value of the truck against St. Paul. "The jury returned a verdict in favor of [Estes] and against [St. Paul] for $26,541.17. The jury also returned a verdict in favor of [the Bank] and against [Estes] for $32,155.17." 479 So.2d at 1276. The Court of Civil Appeals affirmed the holding that Estes's attorney was entitled to recover his fee from the insurance proceeds. This result is sustainable, from the face of the opinion, simply on the basis that the only judgment against St. Paul was in favor of Estes. In collecting that judgment, Estes's attorney was entitled to deduct his fee. That deduction should not affect the Bank's $32,155.17 judgment against Estes. Similarly, if Johanna and Mrs. Jeffreys had obtained a judgment against Connecticut General, Mitchell could have collected his fee from that judgment, but their liability to the Hospital would not have been affected. We agree with Mitchell that the reference by the Court of Civil Appeals inEstes to the "common fund" theory is somewhat inconsistent with its treatment of that theory in Day and in Henley Clarke. The reference in Estes to the "common fund" exception appears both misplaced and unnecessary.
In conclusion, we hold that the general rule applies rather than the "special equity" exception, and that there is no basis for awarding Mitchell an attorney fee that the Hospital must pay out of the insurance proceeds it received from Connecticut General.
Mitchell's argument that he was entitled to an attorney's lien is without merit under the circumstances. For the same reasons stated above as to why the trial court did not err in declining to award a fee to Mitchell that was collectable from the Hospital out of the Connecticut General insurance benefits, the court did not err in declining to declare a lien against those benefits in these circumstances. See § 34-3-61(b), Ala. Code 1975.
Although we have held that Mitchell was not entitled to an attorney fee from Huntsville Hospital out of the proceeds of the Connecticut General check, we would like to quote these correct observations from the trial court's opinion:
 "Mitchell has done an outstanding job in representing his clients and is to be commended for the zealousness with which he has pursued their claims. Mitchell performed a valuable service for his clients in determining the existence of coverage by Connecticut General and in pursuing the insurance company until it paid the claim. Mitchell's service prevented his clients from being sued [for an amount] in excess of $50,000.00. Such efforts clearly merit compensation; however, such compensation is due to be paid under the American system by Mitchell's clients, for whom he rendered the service."
Based upon the foregoing, the judgment of the trial court is affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
All the Justices concur.
[1] The trial court, in its opinion, also addressed a ground for recovery of the fee that Mitchell does not argue on appeal. At trial, Mitchell argued that he was entitled to a fee based on an implied contract of employment with Huntsville Hospital. The trial court, citing Board of Comm'rs of the Alabama State Barv. Jones, 291 Ala. 371, 281 So.2d 267 (1973), held that there was no implied contract of employment and that it was "clear that there was never any mutual assent between Mitchell and the Hospital that would establish an attorney/client relationship." The trial court further held that "Mitchell's client and the hospital (represented by Smith Waldrop) were clearly in an adverse position with regard to the potential collection action being pursued against Pierce and Jeffreys." Because Mitchell has not raised this issue on appeal, this Court will not discuss it further.