CNA Insurance Companies ("CNA") appeals from a judgment denying it subrogation as to claims paid on behalf of its insured, Johnson Galleries, Inc. ("Johnson"), a retail furniture company.
CNA had paid Johnson $263,166 related to storm damage to Johnson's showroom building and inventory. At issue is whether the trial court erred in determining that Johnson's losses exceeded its recoveries from CNA and third parties and in holding, therefore, that CNA was not entitled to subrogation as to the monies it had paid.
The facts underlying this appeal are as follows:
A roofing company had been reroofing Johnson's showroom building when a rainstorm occurred. During the storm, Johnson's inventory and building sustained water damage and, as a result, Johnson lost business. Johnson sued the roofing company, based on the incident, and also made a claim against its insurer, CNA. CNA paid Johnson $263,166 and, at the instance of the roofing company, CNA was joined as a plaintiff to Johnson's lawsuit, because of a potential subrogation interest CNA had in monies Johnson might recover from the roofing company. Just before trial, Johnson's claims against the roofing company were settled with the roofing company's insurer for $452,500. Because Johnson disputed CNA's *Page 1357 
claimed subrogation interest of $263,166, the roofing company's attorney put $263,166 of the $452,500 settlement into escrow pending a determination of how those funds should be disbursed.
At a nonjury trial to determine the proper disbursement of the $263,166, CNA asserted that Johnson's recoveries exceeded its losses and that CNA was therefore entitled to the $263,166 in satisfaction of its subrogation interest. The trial court, based on ore tenus evidence, found that Johnson's losses exceeded its recoveries; it held, therefore, that CNA was not entitled by subrogation to the $263,166 held in escrow.
Findings of fact in a nonjury trial, based on ore tenus
evidence, are presumed on review to be correct. The trial court's judgment, based on such findings, will be reversed only if it is found to be not supported by the evidence or to be plainly and palpably wrong, "after a consideration of that evidence and after making all reasonable inferences from that evidence." Spruiell v. Robinson, 582 So.2d 508, 510 (Ala. 1991).
"[A] subrogee is not entitled to recover, absent full recovery by the insured. . . ." InternationalUnderwriters/Brokers, Inc. v. Liao, 548 So.2d 163, 165
(Ala. 1989). The procedure typically used in determining whether the plaintiff has fully recovered — and therefore whether the plaintiff's indemnitor is entitled to subrogation — involves computing the plaintiff's "total loss" and "total recovery."Complete Health, Inc. v. White, 638 So.2d 784 (Ala. 1994). If the "total recovery" exceeds the "total loss," then the indemnitor is entitled to subrogation. Powell v. Blue Cross Blue Shield, 581 So.2d 772 (Ala. 1990).
On appeal, CNA argues that the trial court erred to reversal in making its itemized factual findings as to Johnson's losses in inventory and attorney fees, which were a part of the trial court's finding as to Johnson's "total loss," and it argues that the court erred in failing to include a $16,000 settlement with Johnson's insurance agent in its itemized findings as to Johnson's "total recovery."
We will first address the "total loss" issues raised by CNA.
In determining the amount of Johnson's "total loss," the trial court found that Johnson owed a $181,000 fee to its attorneys for their work in obtaining the $452,500 settlement from the roofing company's insurer, and it found also that this fee was part of Johnson's "total loss." At trial, CNA argued that this fee was not a recoverable loss and, therefore, could not properly figure into the court's calculations of Johnson's "total loss."
With very few exceptions, a plaintiff cannot recover attorney fees. See Eagerton v. Williams, 433 So.2d 436, 450 (Ala. 1983). No evidence in this case suggests that by the general rule Johnson could recover its attorney fees, nor has Johnson advanced any exception under which it could recover attorney fees. Johnson simply argued at trial, and has argued here, that because it incurred attorney fees in obtaining the settlement with the roofing company's insurer, it had incurred a "loss" in the amount of the fees. Because the evidence presented no basis for determining that Johnson could recover the $181,000 fee, we hold that the trial court erred in including the $181,000 in its finding of Johnson's "total loss."
CNA argues also that the trial court erred in itemizing Johnson's loss as to inventory. Specifically, CNA argues that the court erred in finding the post-damage value of the inventory to be merely its salvage value.
It is the aim of the law to fix damages in an amount that reimburses the "actual loss." Alford v. Jones, 531 So.2d 659
(Ala. 1988). Losses related to damage to tangible things are usually determined by finding the difference between the market value of the item before the damage and its market value after the damage. See id. The parties agree that this method of determining the damage as to the inventory applies in this case, although they disagree as to what the "before and after" market values were. They disagree, specifically, as to whether the post-damage value of the inventory was its salvage value.
Implicit in the trial court's findings as to Johnson's "total loss" was the finding that Johnson's loss of the inventory property alone, i.e., exclusive of lost profits, was $166,806, *Page 1358 
the amount of loss claimed by Johnson at trial.[1] This figure assumes a post-damage value of $71,820, consistent with evidence produced by Johnson that if the damaged inventory had been sold to a salvage company, it would have sold for approximately that amount, subtracted from a pre-damage value of $238,626.
On appeal, Johnson argues that the trial court's valuation of the loss to its inventory based on evidence of its post-damage salvage value is supported by the record. CNA argued at trial, and argues here, that the salvage value of the inventory could not properly be considered on the question of the post-damage value of the inventory. We agree. Undisputed evidence shows that after the damage was incurred the inventory was in a condition good enough that it was sold to the public for $191,734 as damaged, nearly the same price that Johnson had paid for it undamaged. Given the undisputed evidence that the inventory was in a better than "salvage" condition, the fact that the furniture might have been sold for a very low price to a salvage company bears no relationship to Johnson's actual loss. Because, as stated, it is the aim of damages to compensate for the "actual loss," it is irrelevant whatmight have been lost.
The undisputed relevant evidence as to the post-damage value of the inventory shows that value to have been $191,734. Therefore, the trial court erred in fixing that value at $71,820.
Because the post-damage value of the furniture was $191,734, rather than $71,820, we must conclude that Johnson's loss on the inventory property alone (exclusive of any lost profits), was $119,914 less than the amount of $166,806 found by the trial court.
The effect of our holding that the loss on inventory was $119,914 less than the amount found by the trial court, and our holding that the $181,000 attorney fee could not properly be included in the court's calculations of Johnson's "total loss," is to reduce Johnson's "total loss," found by the trial court to be $759,132, to $458,218.
We now turn to the question of Johnson's "total recovery."
As stated, Johnson's total recovery includes the settlement of $452,500 from the roofing company's insurer and the $263,166 from CNA. The trial court found that these two sums combined ($715,666) equalled the amount of Johnson's "total recovery." At issue is whether the trial court erred in not including in this amount an additional $16,000 settlement Johnson obtained from its insurance agent regarding one of the losses in question. On appeal, CNA argues that the trial court clearly erred in not including the $16,000 in its calculation of Johnson's total recovery. It is undisputed that, as the majority owner of Johnson testified, Johnson received $16,000 from its insurance agent related to damage to the Johnson showroom building. In Powell, 581 So.2d at 778, the Court stated that "calculation of the amount received in compensationrequires consideration of every payment made to, or on behalf of, the plaintiff that arises out of the damages sustained in the event that gave rise to the cause of action." (Emphasis added.) We observe that nothing in the record could reasonably be construed as indicating other than that the $16,000 payment to Johnson arose "out of the damages sustained in the event that gave rise to the cause of action."[2]
We must conclude that the trial court erred in not including the $16,000 settlement in its calculation of Johnson's total recovery. *Page 1359 
When this $16,000 is added to the recoveries from CNA and the roofing company's insurer, Johnson's total recovery comes to $731,666. Subtracting the total loss we have discussed ($458,218), from the total recovery ($731,666), we determine that Johnson has fully recovered its losses and has obtained an excess recovery of $273,448. Accordingly, the trial court erred in holding that CNA had no right of subrogation in regard to Johnson's recovery from third parties.
Finally, CNA raises an issue as to whether Johnson's attorneys are entitled under the "common fund" doctrine to a fee from CNA for their work in obtaining the settlement with the roofing company. Specifically, CNA asks whether its subrogation interest should be reduced by an amount attributable to a portion of the fees owed to Johnson's attorneys for their work in obtaining the recovery from the third party.
In Powell v. Blue Cross Blue Shield, 581 So.2d 772
(Ala. 1990), we illustrated several examples of how a trial court is to compute a plaintiff's total loss and total recovery in determining whether there is an excess available for subrogation. We observed specifically that attorney fees were not a part of the court's illustrations of "total loss," but that such amounts would reduce reimbursement to the indemnitor (here, CNA), "by an amount equal to the indemnitor's pro rata
share of the attorney fees . . ., computed, of course, only against the third-party recovery." Id. at 781. Stated differently, if the indemnitor is entitled to subrogation (because total losses are less than total recovery), the amountthe indemnitor is to be reimbursed is reduced by attorney fees the indemnitor legally owes, related to efforts in obtaining a third-party recovery. The question in this case is whether CNA, the indemnitor/subrogee, legally owes fees to Johnson's attorneys based on their obtaining the recovery from the roofing company.
The "common fund" doctrine is an exception to the general rule that attorney fees are not recoverable. Mitchell v.Huntsville Hosp., 598 So.2d 1358, 1361 (Ala. 1992). If it applied in a case like this one, it would permit a plaintiff's attorney to recover attorney fees from others who directly benefit from the attorney's efforts in obtaining a recovery for his or her client. See Eagerton, 433 So.2d at 450-51. However, if the attorney is simply acting on behalf of his or her client, and a benefit only incidentally comes to others, the attorney is not entitled to a fee from those receiving the incidental benefit. Mitchell, 598 So.2d 1358 (Ala. 1992). In this regard, a benefit can be an incidental, rather than an intended, result of an attorney's efforts, if the relationship between the attorney and the "nonclient" person receiving the benefit is an adversarial one. See Mitchell, 598 So.2d at 1361;Lewis v. Railroad Retirement Bd., 256 Ala. 430, 54 So.2d 777
(1951).
It is clear from undisputed facts that Johnson's attorneys did not seek the roofing company recovery to benefit anyone other than their client; this is evident from their client's adversarial relationship with CNA as to its entitlement, through subrogation, to any of that settlement. Johnson's attorneys actively and consistently sought to prevent CNA from obtaining any of that settlement. The only reasonable inference to be drawn is that in obtaining the recovery from the roofing company, Johnson's attorneys were simply acting on behalf of their client. We conclude that Johnson's attorneys would not be entitled to recover attorney fees from CNA on a common fund theory.
CNA raises other issues that it says, would require a reversal. Because the errors we have addressed require a reversal, we need not discuss those other issues. We reverse the judgment and remand this case for an order disbursing the monies held in escrow in a manner consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur.
HOUSTON, J., concurs specially.
COOK, J., concurs in part and dissents in part.
[1] With one exception, the trial court itemized Johnson's losses separately. As to inventory loss, the trial court found a total figure representing, the parties agree, both damage to the inventory alone and lost profits on the inventory. The trial court calculated Johnson's loss as to inventory property and as to lost profits at $286,720 with, the parties suggest, $119,914 of that amount representing lost profits on the inventory and $166,806, the amount claimed by Johnson, representing the loss to the inventory property alone. We observe that there was no evidence before the court from which it could have inferred a loss to the inventory property alone in excess of $166,806, so we presume, as the parties suggest, that this was the finding of the trial court as to the inventory alone.
[2] Johnson's majority owner testified that it was his "intention to give it [the $16,000] back," but the record would in no way support a finding that Johnson had any legal obligation to do so.