**STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY**

v.

**James Ross PRITCHARD, Jr.**

2130989.

Court of Civil Appeals of Alabama.

June 12, 2015.

William W. Watts III of Pipes, Hudson & Watts, LLP, Mobile; and Mark R. Ulmer of Ulmer, Hillman & Ballard, PC, Mobile, for appellant.

Edward P. Rowan and Mallory J. Mangold of Taylor Martino, P.C., Mobile, for appellee.

**PER CURIAM.**

In January 2011, James Ross Pritchard, Jr., was involved in an automobile accident with an automobile driven by Broderick McCants. McCants was insured by GEICO Insurance Company ("GEICO"); his policy limits were $50,000. State Farm Mutual Automobile Insurance Company ("State Farm") was Pritchard's insurer; Pritchard's policy included $100,000 in underinsured-motorist ("UIM") coverage.

■ Pritchard sued McCants, State Farm, USAA Casualty Insurance Company,[1] and fictitiously named parties, alleging various causes of action and seeking damages in excess of the limits of McCants's

---

1. The claims against USAA Casualty Insurance Company ("USAA") were initially claims seeking UIM benefits. However, Pritchard later amended his complaint to assert against USAA claims including negligent failure to procure insurance and fraud. The claims against USAA were ordered severed from the action, *see* Rule 21, Ala. R. Civ. P., in April 2014; however, the trial court failed to direct the circuit clerk to establish a new case file for those claims until State Farm moved for that specific relief in August 2014.

policy. GEICO offered McCants's policy limits to settle the claim against him. State Farm "bought out" or advanced to Pritchard the $50,000 limits of McCants's policy, and it opted out of the litigation.[2] After a jury trial, the trial court entered a judgment in favor of Pritchard for $400,000.[3] Pritchard filed a motion requesting that State Farm be ordered to contribute $20,000 toward his attorney fee under the common-fund doctrine.[4] The trial court granted Pritchard's motion.

State Farm appeals from the order requiring it to pay $20,000 of Pritchard's attorney fee. State Farm requested oral argument regarding its contention that the common-fund doctrine should not apply and that it should not be responsible for any portion of the attorney fee incurred by Pritchard. Oral argument was held in this case on April 15, 2015. We review de novo the trial court's order requiring State Farm to pay a portion of Pritchard's attorney fee under the common-fund doctrine. *Ex parte State Farm Mut. Auto. Ins. Co.*, 118 So.3d 699, 704 (Ala.2012) ("Although this matter involves an award of attorney fees, which we generally review to determine whether the trial court exceeded its discretion, whether the common-fund doctrine applies in a case where the facts are undisputed presents a question of law, which we review de novo.").

*What is the Common–Fund Doctrine?*

"Generally, the 'common fund' doctrine is an equitable principle designed to compensate an attorney whose services on behalf of his client operated to create, discover, increase, preserve, or protect a fund to which others may also have a claim. 7A C.J.S., *Attorney & Client* § 334."

*Henley & Clarke, P.C. v. Blue Cross–Blue Shield of Alabama*, 434 So.2d 274, 276 (Ala.Civ.App.1983). The common-fund doctrine is an exception to the American rule, which provides that each party bear his or her own attorney fees. *Ex parte State Farm Mutual Auto. Ins. Co.*, 118 So.3d at 703. Under the American rule, attorney fees are recoverable by a party "only when 'authorized by statute, when provided in a contract, or by special equity.'" *Mitchell v. Huntsville Hosp.*, 598 So.2d 1358, 1360 (Ala.1992) (quoting, among other cases, *Eagerton v. Williams*, 433 So.2d 436, 450 (Ala.1983)).

"The common-fund exception as recognized in Alabama is derived from notions of equity and, in matters involving insurance subrogation, proceeds from the proposition that when an insurance carrier 'is entitled to share, to the extent of its subrogation interest, in any recovery its insured achieves against a tortfeasor,'

2. See *Lambert v. State Farm Mutual Automobile Insurance Co.*, 576 So.2d 160, 167 (Ala. 1991), for a discussion of the process by which a UIM insurer may preserve its right to subrogation of the liability limits of a tortfeasor's policy when the UIM insurer's insured seeks to establish damages exceeding the liability limits of the tortfeasor's insurance policy.

3. The existence of fictitiously named parties in the complaint does not prevent a judgment entered by a trial court from being final. *See Griffin v. Prime Healthcare Corp.*, 3 So.3d 892 n. 1 (Ala.Civ.App.2008).

4. Pritchard also sought an order requiring State Farm to pay a pro rata share of his litigation expenses and requested that the costs of the litigation be taxed against State Farm. The trial court taxed costs against State Farm, and Pritchard withdrew his request seeking to require State Farm to pay a pro rata share of his expenses; however, the trial court ordered that State Farm pay the $1,717.40 in expenses Pritchard had requested. State Farm makes no argument regarding the award of expenses.

that carrier 'should bear a proportionate share of the burden of achieving that recovery—including a pro rata share of the insured's attorney fee.' *Government Emps. Ins. Co. v. Capulli*, 859 So.2d 1115, 1119 (Ala.Civ.App.2002)."

*Mitchell v. State Farm Mut. Auto. Ins. Co.*, 118 So.3d 693, 694 (Ala.Civ.App.2011), *aff'd, Ex parte State Farm Mut. Auto. Ins. Co.*, 118 So.3d at 712.

■ Generally, in order to be entitled to a common-fund payment, a plaintiff must prove five elements:

"(1) there must be a 'fund' from which to compensate the attorney; (2) the attorney's services must directly benefit the fund; (3) the party seeking the fee and the party to be charged with the fee must have a common interest in the fund; (4) the proceedings must be equitable in nature, and (5) the fund must be within the control of the court."

*Government Emps. Ins. Co. v. Capulli*, 859 So.2d 1115, 1122 (Ala.Civ.App.2002). However, in insurance-subrogation cases, this court has explained that only two elements must be proven: "(1) there must be a 'fund' from which to compensate the attorney; and (2) the attorney's services must directly benefit the fund." *Capulli*, 859 So.2d at 1122. This is so, we explained, because the third and fourth requirements are necessarily met in an insurance-subrogation case because of the nature of the right of subrogation. *Id.* Regarding the fifth element—the fund must be within the control of the court—the issue in *Capulli* was whether the "fund" must be created by actual litigation; we concluded that litigation is not required to create the "fund." *Id.* at 1123. The fifth element is not at issue in the present case.

*The Common–Fund Doctrine As Applied in UIM Cases*

There are only two Alabama cases directly considering the application of the common-fund doctrine to UIM insurers: *Eiland v. Meherin*, 854 So.2d 1134 (Ala. Civ.App.2002), and *Alston v. State Farm Mutual Automobile Insurance Co.*, 660 So.2d 1314 (Ala.Civ.App.1995). In both, a common-fund payment was required of the UIM insurer.

In *Alston*, Dennis Alston's minor son was injured in an automobile accident. *Alston*, 660 So.2d at 1314. Alston was insured by State Farm; Alston's policy included UIM coverage. *Id.* Alston sued the driver of the other automobile involved in the accident, Linda Leatherwood. *Id.* Leatherwood was insured by Allstate Insurance Company, which offered to settle Alston's claim by paying the $20,000 policy limits of Leatherwood's policy to Alston. *Id.* at 1315. In compliance with the procedure outlined in *Lambert v. State Farm Mutual Automobile Insurance Co.*, 576 So.2d 160, 167 (Ala.1991), State Farm advanced the $20,000 to Alston and executed an agreement with Alston to protect its subrogation rights. *Id.* After a trial, the jury returned a verdict of $26,574 in favor of Alston. *Id.* State Farm paid $6,574 to Alston in satisfaction of its liability for UIM benefits. *Id.* Alston moved for a common-fund payment from State Farm; the trial court denied that motion, and Alston appealed. *Id.*

On appeal, Alston argued that State Farm should be required to contribute to his attorney fee. *Id.* He contended that the fund in which he and State Farm held a common interest was the $20,000 State Farm had advanced to preserve its subrogation rights. *Id.* State Farm did not dispute the existence of the fund, that the parties shared a common interest in the fund, or that the benefits bestowed on it

were direct as opposed to incidental. *Id.* at 1316. Instead, relying on the principle that an insurer is not required to contribute to the insured's attorney fee when the insurer itself had expended substantial sums in creating the fund, State Farm argued that it had intervened in the action and that, as a result, it had actively participated in the litigation. *Id.* This court determined that, despite State Farm's intervention in the action and its filing of a few discovery requests, it had not "expend[ed] a substantial cost of the litigation." *Id.* Thus, we reversed the judgment of the trial court and remanded the cause for the trial court to enter a judgment requiring State Farm to pay its pro rata share of the attorney fee. *Id.*

In *Eiland,* the issue was whether, when the amount of recovery was equal to the amount of the insurer's subrogated interest, the insurer should pay any portion of the insured's attorney fee. *Eiland,* 854 So.2d at 1136. The insured in *Eiland,* Shelby Eiland, was insured by State Farm; he had UIM coverage under his State Farm policy. *Id.* at 1135. Eiland was injured in an automobile accident caused by Bridgette Meherin. *Id.* Eiland sued Meherin, seeking damages in excess of her policy limits, and Meherin's insurer offered the $100,000 policy limits of Meherin's insurance policy. *Id.* State Farm paid to Eiland $100,000 to protect its subrogation rights and opted out of the litigation. *Id.* The judgment entered on the jury verdict was $50,000. *Id.* Meherin's insurer paid the $50,000 judgment into court. *Id.*

Eiland sought a common-fund payment from State Farm. *Id.* at 1136. The trial court denied Eiland's request, determining that the only party having any interest in the $50,000 collected was State Farm, i.e., that the parties did not share a common interest in the fund. *Id.* On appeal, this court concluded that, based on *Alston,*

State Farm was indeed required to assume its share of the attorney fee incurred by Eiland. *Id.* at 1139.

"In this case, the insurer (State Farm) took no active part in the litigation between its insured (Eiland) and the tortfeasor (Meherin). Instead, State Farm relied on the efforts of Eiland's attorney to protect its subrogation interest. State Farm was a passive beneficiary of the $50,000 judgment recovered through the efforts of Eiland's attorney. The fact that State Farm was the *only* beneficiary of the $50,000 judgment does not mean the common-fund doctrine does not come into play; it means that State Farm's pro rata share of Eiland's attorney fee is 100 percent. It stands to reason that if an insurance company must pay a fee when its insured shares in the recovery, then it should pay *even more of the fee* (in fact, all of the fee-rather than none of the fee), when its insured does *not* share in the recovery."

*Eiland,* 854 So.2d at 1137. Because State Farm was entitled to the entire recovery, this court determined that it was required to pay 100% of Eiland's attorney fee. *Id.* In rejecting State Farm's argument that the common-fund doctrine did not apply because the fund, according to State Farm, was not a "common fund," based on the fact that only State Farm had an interest in the $50,000 recovery, this court stated: "Perhaps a 'common fund' is better conceptualized as a recovery in which more than one party has, at the outset of the controversy, a potential interest." *Id.*

*The Impact of* Ex parte State Farm Mutual Automobile Insurance Co. *on the Application of the Common–Fund Doctrine in UIM Cases*

State Farm contends that our supreme court, in *Ex parte State Farm Mutual Automobile Insurance Co.,* 108 So.3d 1008 (Ala.2012), indicated that the common-fund

doctrine should not apply to require a UIM insurer to pay a portion of its insured's attorney fee. We have considered the facts and our supreme court's opinion in *Ex parte State Farm*. However, we are not convinced that the opinion stands for the proposition that the common-fund doctrine does not apply to UIM insurers.

The facts of *Ex parte State Farm* are similar to those presented in the present case. State Farm's insured, Charles Baggett, had been involved in an automobile accident with Diana Morris. *Ex parte State Farm Mutual Auto. Ins. Co.*, 108 So.3d at 1008. Morris was insured by Sagamore Insurance Company ("Sagamore"); the limits of her insurance policy were $25,000. *Id.* State Farm advanced Baggett the $25,000 limits of Morris's policy and opted out of Baggett's action against Morris. *Id.* Baggett received a $181,046 judgment against Morris, *id.* at 1009, an amount larger than the combined limits of Morris's $25,000 policy and Baggett's UIM policy, the limits of which were $60,000, *Id.* at 1008. Sagamore paid Baggett the $25,000 Morris owed, and State Farm inadvertently paid Baggett the entire $60,000 policy limits of his UIM insurance policy instead of deducting the $25,000 State Farm had already advanced to Baggett. *Id.* at 1009. Because Baggett was entitled to a total of only $85,000 from both insurers, the trial court ordered Baggett to return to State Farm its $25,000 overpayment, but the trial court instructed Baggett to withhold an attorney fee from the amount returned to State Farm. *Id.*

State Farm appealed, and, after the appeal was transferred to this court, this court affirmed the trial court's judgment, without an opinion. *Id.* at 1009; *see State Farm Mut. Auto. Ins. Co. v. Baggett* (No. 2100221, February 4, 2011), 97 So.3d 816 (Ala.Civ.App.2011) (table). On certiorari review, however, our supreme court re-versed this court's judgment and directed this court to reverse the trial court's judgment and to instruct the trial court to order Baggett to reimburse State Farm the entire $25,000. *Ex parte State Farm*, 108 So.3d at 1009. Our supreme court explained: "Baggett obtained a judgment against Morris for $181,046. Sagamore paid $25,000, the limit of its insured's policy. Including the $25,000 State Farm had advanced to Baggett, State Farm paid $85,000, $25,000 more than its policy limit of $60,000. Thus, State Farm is entitled to the reimbursement of its overpayment." *Id.* at 1009.

Because our supreme court required Baggett to reimburse State Farm the entire $25,000 overpayment it had made, State Farm contends that our supreme court rejected the application of the common-fund doctrine to UIM insurers. Indeed, the practical effect of our supreme court's decision that the trial court's judgment reimbursing State Farm the $25,000 overpayment less an attorney fee should be reversed was to deprive Baggett of his common-fund payment. However, *Ex parte State Farm* mentions the common-fund doctrine only insofar as it comments that the parties argued in their briefs regarding the common-fund doctrine and implies that the parties had mistakenly considered the common-fund doctrine to be at issue in the case when our supreme court had concluded that it was not. *Id.* The opinion states:

> "Both parties' arguments assume that this case involves the application of the common-fund doctrine. This Court, however, has determined that this case is simply one in which an insurer inadvertently paid $25,000 in excess of its policy limits, and the insurer is entitled to a refund of that excess amount."

*Id.* Thus, our supreme court did not actually address the applicability of the common-

fund doctrine and, in fact, explicitly stated that the case did not involve application of the doctrine. Based on our supreme court's express statement that the appeal did not involve application of the common-fund doctrine, we cannot conclude that *Ex parte State Farm* requires that we reverse the trial court's judgment in the present case.

### Whether the Elements Required for Application of the Common–Fund Doctrine Are Satisfied in the Present Case

On appeal in the present case, State Farm argues that this court should, at the very least, find the cases applying the common-fund doctrine to UIM cases—*Eiland* and *Alston*—distinguishable from the situation presented in this particular case because, unlike the situations presented in both *Eiland* and *Alston,* the situation in the present case is such that State Farm is not entitled to any reimbursement of the funds it had advanced and, in fact, State Farm had to pay additional money to Pritchard in satisfaction of the limits of his UIM policy. State Farm argues that no fund was created by Pritchard's attorney and that it and Pritchard do not have a common interest in any fund created by the litigation, thus preventing application of the common-fund doctrine.

■ State Farm's first argument against the application of the common-fund doctrine is that no fund was created by Pritchard's litigation with McCants. State Farm contends that in situations like the one in the present case, where the recovery secured is more than twice the amount of the tortfeasor's policy limits available to the insured (i.e., more than the sum of the amount of the tortfeasor's policy limits and the amount advanced by the UIM insurer under *Lambert* ), no fund is created, because the insured will not owe any funds to the UIM insurer and the UIM insurer will

be required to pay to the insured any recovery exceeding twice the amount of the tortfeasor's policy limits, up to the amount of its UIM policy limits. We cannot agree that the fact that State Farm was not entitled to be reimbursed from the fund results in a conclusion that no fund was created by Pritchard's litigation with McCants. The fund is composed of McCants's $50,000 in liability insurance, which, after the entry of the judgment on the jury verdict, GEICO owed to Pritchard. Although State Farm was ultimately not entitled to recover money from that fund, the fund existed. The $50,000 fund served as a credit against the amount that State Farm was required to pay Pritchard in UIM benefits, and, in that respect, it inured to State Farm's benefit.

■ Secondly, State Farm contends that it and Pritchard do not have a common interest in the fund up to the amount of the advance of $50,000 because that $50,000 must be repaid to State Farm. We reject this argument. As we have explained before, the nature of the right of subrogation itself satisfies the requirement that the insurer to be charged with the attorney fee and the insured have a common interest in the fund. *Capulli,* 859 So.2d at 1122. At the outset of the litigation, State Farm and Pritchard both had a potential interest in the potential recovery from McCants, and "State Farm relied on the efforts of [Pritchard's] attorney to protect its subrogation interest." *Eiland,* 854 So.2d at 1137. As this court explained in *Eiland:* a UIM insurer and the insured have a common interest in the fund when the recovery includes the amount advanced by the UIM insurer, to which it has a potential right, even if it does not actually collect that money out of the fund. *Id.*

Furthermore, the *Eiland* court considered the discussion set out in *Mathews v. Bankers Life & Casualty Co.,* 690 F.Supp.

984, 987 (M.D.Ala.1988), in which a federal district court noted that the application of the common-fund doctrine might not seem compelling in a case in which the insured has secured a significant recovery. The *Mathews* court considered that declining to apply the common-fund doctrine in a case involving a large recovery in favor of the insured could have a drastic effect on cases in which the amount recovered is less than, equal to, or only slightly more than the amount to which the insurer is entitled. *Mathews,* 690 F.Supp. at 987. The *Mathews* court explained:

"Application of the 'common fund' doctrine to the facts of this case is not particularly compelling since plaintiff[-attorneys] have recovered already a large attorney fee and the [insured] ha[s] obtained a recovery substantially in excess of five million dollars.

"However, in holding the 'common fund' doctrine applicable, this Court is mindful that a contrary rule would be manifestly unjust. A different set of facts illuminates the gross unfairness of the rule urged by defendant. Suppose an insured suffers one hundred thousand dollars in medical expenses because of an accident caused by third party tortfeasors. Assume also, insurer advances insured one hundred thousand dollars, reserving a contractual right of reimbursement out of any recovery from third parties. Assume further, as in this case, insured hires an attorney under a contingency fee contractual arrangement and sues third party tortfeasors and recovers one hundred thousand dollars. Under insurer's theory, the insured would have to reimburse insurer the amount of his recovery ($100,000) and insured would have to pay the attorney fee for creating a $100,000 recovery for the insurance company."

*Id.* The rationale expressed in *Mathews* and approved in *Eiland* supports an affirmance of the trial court's judgment ordering a common-fund payment.

Using similar logic as that employed in *Eiland* supports a conclusion that, although State Farm will not actually receive payment from the fund, the amount of State Farm's liability after entry of the judgment is reduced by collection of the tortfeasor's insurance funds, making the fund "common" in that respect. Even further support is found in the fact that, when it advances the tortfeasor's policy limits under *Lambert,* a UIM insurer is taking a gamble that the insured will prove damages of at least that amount. If the insured does not, the UIM insurer is not reimbursed for any amount of the advance above the amount of the recovery achieved. The UIM insurer, then, receives a direct benefit from the efforts of the attorney in securing at least the amount of the advance, which would be the common fund, and thereby protecting the UIM insurer's subrogation interest. *See Capulli,* 859 So.2d at 1119 (noting that "an insurer is entitled to share, to the extent of its subrogation interest, in any recovery its insured achieves against a tortfeasor....."). Thus, the $50,000 fund was secured by Pritchard's attorney, State Farm benefited from the efforts of Pritchard's attorney in securing a recovery of at least $50,000, and State Farm's liability for UIM benefits was reduced by the amount of the advance.

As a further argument against application of the common-fund doctrine, State Farm seeks to apply certain defenses to escape the application of the common-fund doctrine. State Farm first likens the relationship between it and Pritchard to a debtor-creditor relationship insofar as the amount of the advance is concerned. State Farm is correct that

"[t]he common-fund doctrine has no application when the relationship between the attorney's client and the party sought to be charged with the attorney fee is one of debtor and creditor." *Capulli*, 859 So.2d at 1121. As we explained in *Capulli*, " '[t]he obligation of the subrogated insurer to share in the costs of recovery from a third party wrongdoer arises because the insurer occupies the position of the insured with coextensive rights and liability and *no creditor-debtor relationship between them.'* " *Id.* (quoting *Sisters of Charity v. Nichols*, 157 Mont. 106, 112, 483 P.2d 279, 283 (1971)) (emphasis added). Further discussion in *Capulli* illustrates the difficulty with making the relationship between an insured and his or her UIM insurer one of debtor and creditor: "[U]nlike a subrogated insurer, the creditor's right to payment of its claim was not contingent on the client-debtor's recovery of a 'fund' from which the creditor could receive payment." *Id.* As State Farm admits, once a UIM insurer has advanced funds to its insured, the insured who ultimately achieves a judgment against the tortfeasor for less than the advanced amount is not required to reimburse the UIM insurer any portion of the advance in excess of the recovery achieved. Based on that information, we cannot agree with State Farm that the relationship between it and Pritchard is a true debtor-creditor relationship precluding the application of the common-fund doctrine.

■ State Farm next argues that the common-fund doctrine should not apply because it and Pritchard are in an adversarial posture. State Farm bases its argument on the fact that, as a UIM insurer, it does not want Pritchard to prove damages in excess of the policy limits of McCants's liability policy, because that would expose State Farm to liability for UIM benefits. However, an adversarial relationship between an insurer and its insured that would prevent application of the common-fund doctrine exists only where the insured is contesting the subrogation right of the insurer. *See Lyons v. GEICO Ins. Co.*, 689 So.2d 182, 184 (Ala. Civ.App.1997) (rejecting the idea that the adversarial relationship between the insured and the insurer on the issue of the insurer's right to intervene prevented application of the common-fund doctrine and noting that "the parties did not have an adversarial relationship as to whether GEICO was entitled to subrogation"); *see also* Johnny Parker, *The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation*, 31 Ind. L.Rev. 313, 332 n. 101 (1998) ("[T]he relationship is not adversarial unless the subrogor is denying that the subrogee has a subrogated interest in the proceeds. Conflicts, such as disputes over the right to intervene, distribution of the funds or as between the subrogee and the attorney as to the attorney's right to, or amount of a fee, do not involve the type of adverse relationship which would preclude application of the common fund doctrine."). That is, insofar as the amount to which the UIM insurer is subrogated, a UIM insurer and its insured are not in an adversarial posture provided the insured admits that the UIM insurer has a subrogation interest in the fund. Although it may not wish for the insured to prove damages in excess of the tortfeasor's policy limits, the UIM insurer clearly desires that it be reimbursed the amount of the advance it has made. Thus, we conclude that, to the extent of its subrogation interest, State Farm and Pritchard were not in an adversarial relationship.

■ State Farm also argues that the common-fund doctrine should not apply because, it contends, it received no direct

benefit as a result of the legal work performed by Pritchard's attorney. The incidental-benefit defense can preclude application of the common-fund doctrine. *Capulli,* 859 So.2d at 1126. However, most of the cases applying the incidental-benefit defense were, as we explained in *Capulli,* actually based on the fact that the party to be charged with the attorney fee and the attorney's client had a debtor-creditor relationship. *Id.* at 1121. We have rejected State Farm's argument that it and Pritchard had a debtor-creditor relationship. State Farm further relies on what it characterizes as an adversarial relationship between it and Pritchard as a basis for determining that any benefit it received from the efforts of Pritchard's attorney was merely incidental. We have also rejected the argument that the relationship between State Farm and Pritchard was an adversarial one.

■ To the extent State Farm's argument—that it received no direct benefit from the efforts of Pritchard's attorney—is based on the facts that Pritchard had already received an offer of the policy limits from GEICO and that Pritchard had received those funds from State Farm under the procedure outlined in *Lambert,* 576 So.2d at 167, we conclude that State Farm has not proved that the benefit to it was merely incidental. Because of the nature of UIM litigation, we conclude that State Farm was directly benefited by the efforts of Pritchard's attorney up to the amount of the advance. State Farm had a subrogation interest equivalent to the amount of the advance. Because State Farm, as permitted by *Lambert,* refused to approve the settlement with GEICO and opted out of the litigation, it was incumbent upon Pritchard to seek to establish his damages in an action against McCants. At the outset, State Farm and Pritchard knew that any recovery up to and including $50,000 belonged to State Farm. Thus, Pritchard's goal, although it may have also included a desire to prove damages exceeding $50,000, was first to prove his entitlement to McCants's $50,000 policy limits. Thus, to the extent of the amount of State Farm's advance, State Farm was most certainly an intended beneficiary of the efforts of Pritchard's attorney.

### Conclusion

State Farm was properly required to pay its pro rata share of Pritchard's attorney fee. Pritchard's attorney created a fund out of which he could be compensated, his efforts directly benefited that fund, and, because State Farm had a subrogation interest in the $50,000 it had advanced to Pritchard, both State Farm and Pritchard had a common interest in the fund. Furthermore, State Farm and Pritchard did not have a debtor-creditor relationship, and their relationship was not adversarial with respect to the $50,000 fund. State Farm was a direct beneficiary of the efforts of Pritchard's attorney. Accordingly, the judgment of the trial court ordering State Farm to pay a pro rata share of Pritchard's attorney fee under the common-fund doctrine is affirmed.

AFFIRMED.

THOMPSON, P.J., and DONALDSON, J., concur.

THOMAS, J., concurs specially.

PITTMAN, J., dissents.

MOORE, J., dissents, with writing.

THOMAS, Judge, concurring specially.

I agree with the main opinion that, based on *Eiland v. Meherin,* 854 So.2d 1134 (Ala.Civ.App.2002), and *Alston v. State Farm Mutual Automobile Insurance Co.,* 660 So.2d 1314 (Ala.Civ.App.1995), the

common-fund doctrine applies to require State Farm Mutual Automobile Insurance Company ("State Farm") to pay a pro rata share of the attorney fees incurred by James Ross Pritchard, Jr. I note that the confusion regarding whether State Farm has a subrogation right in that portion of the recovery secured by Pritchard's attorney that represents the advance State Farm provided Pritchard stems from the case that set out the method by which an underinsured-motorist ("UIM") insurer could protect its subrogation right when a tortfeasor offered to settle the claim asserted against him or her by the insured. In *Lambert v. State Farm Mutual Automobile Insurance Co.*, 576 So.2d 160, 167 (Ala.1991), our supreme court explained that a UIM insurer that wishes to protect its subrogation rights against the tortfeasor may decline to approve a settlement offer and advance the amount of that offer to its insured. Any advance is repaid to the UIM insurer from the ultimate recovery secured by the insured's attorney in an action against the tortfeasor. Whether the UIM insurer's right to recover that advance is considered to be a form of subrogation right is not clear from *Lambert.* Therefore, I urge our supreme court to take the next opportunity to consider the character of a UIM insurer's right to recover the advance paid to its insured under *Lambert* and to clearly address whether the common-fund doctrine should be applied to UIM insurers who make such advances.

MOORE, Judge, dissenting.

I respectfully dissent.

In *Ex parte State Farm Mutual Automobile Insurance Co.*, 108 So.3d 1008 (Ala. 2012), Charles Baggett, who was insured by State Farm Mutual Automobile Insurance Company ("State Farm") for underinsured-motorist ("UIM") benefits, obtained a judgment for $181,046 in a civil action against Diana Morris. Sagamore Insurance Company, an automobile-liability-insurance carrier, insured Morris for $25,000, which amount State Farm had advanced to Baggett in accordance with the procedures set out in *Lambert v. State Farm Mutual Automobile Insurance Co.*, 576 So.2d 160 (Ala.1991). After the entry of the judgment, Sagamore paid Baggett $25,000, and State Farm mistakenly paid Baggett its UIM policy limits of $60,000, in addition to the $25,000 that it had already advanced to Baggett, instead of taking a credit for the $25,000 advance and correctly paying Baggett $35,000. The trial court ordered Baggett to refund $25,000 to State Farm but also ordered State Farm to pay Baggett an attorney's fee under the common-fund doctrine. After this court affirmed that judgment, our supreme court, on certiorari review, reversed this court's judgment, holding that Baggett was not entitled to any attorney's fee on the mistaken overpayment. The court went on to say:

> "If an attorney fee was due Baggett's attorney with respect to all or part of the $85,000 actually owed in the aggregate by Sagamore and State Farm, *then the fee should be taken from the $85,000,* not from the $25,000 State Farm overpaid and as to which it is entitled to be reimbursed."

108 So.3d at 1009 (emphasis added).

In this case, James Ross Pritchard, Jr., who was insured by State Farm for UIM benefits, obtained a judgment for $400,000 in a civil action against Broderick McCants. GEICO Insurance Company, an automobile-liability-insurance carrier, insured McCants for $50,000, which amount State Farm had advanced to Pritchard in accordance with the procedures set out in *Lambert, supra.* After the entry of the judgment, GEICO ten-

dered payment of its policy limits of $50,000 and State Farm tendered payment of $50,000, the remainder of its UIM policy limits of $100,000, correctly taking credit for its $50,000 advance. According to *Ex parte State Farm*, "[i]f an attorney fee was due [Pritchard's] attorney[s] with respect to all or part of the [$150,000] actually owed in the aggregate by [GEICO] and State Farm, *then the fee should be taken from the $150,000....*"[5] 108 So.3d at 1009. It is undisputed that Pritchard's attorneys are, in fact, entitled to recover a fee from the $150,000 it received in the aggregate from GEICO and State Farm; however, State Farm objects to paying Pritchard's attorneys an additional $20,000 fee awarded by the trial court. In its final order, the trial court basically reasoned that Pritchard's attorneys, by recovering $50,000 from GEICO, created a common fund that conferred a direct benefit on State Farm and for which State Farm was obligated to pay a 40% fee. The trial court erred in that regard.

In its order, the trial court relied on *Alston v. State Farm Mutual Automobile Insurance Co.*, 660 So.2d 1314 (Ala.Civ. App.1995), and *Eiland v. Meherin*, 854 So.2d 1134 (Ala.Civ.App.2002), to support its attorney-fee award. *Alston* is not on point because, based on the concessions of the UIM carrier in that case, *see* 660 So.2d at 1316, this court did not address the basic issue whether the common-fund doctrine applies to the recovery of a payment that was advanced pursuant to *Lambert* ("a *Lambert* payment"). *Eiland* is not directly on point, either, because the insured in that case recovered only part of the *Lambert* payment. Nevertheless, *Eiland* does stand for the general proposition that the common-fund doctrine applies to the recovery of a *Lambert* payment. In my opinion, *Eiland* was wrongly decided.

In *Eiland*, this court started off with the proposition that insurance-subrogation principles apply to the recovery of a *Lambert* payment. This court stated:

"The common-fund doctrine *in insurance-subrogation cases* is based on the equitable notion that, because an insurer is entitled to share, *to the extent of its subrogation interest*, in any recovery its insured achieves against a tortfeasor, the insurer should bear a proportionate share of the burden of achieving that recovery—including a pro rata share of the insured's attorney fee."

854 So.2d at 1136–37 (emphasis added). This court then went on to state that an insured's attorney, who pursues a civil action against a tortfeasor under *Lambert*, acts, in part, "to protect [the UIM carrier's] *subrogation interest.*" 854 So.2d at 1137 (emphasis added). However, unlike as incorrectly stated in the main opinion, 576 So.3d at 161 n. 1, in a *Lambert* situation the UIM insurer does not, by advancing funds to the insured, obtain any subrogation rights against the proceeds of the tortfeasor's automobile-liability-insurance policy. *Lambert*, itself, provides otherwise:

" 'Underinsured motorist coverage provides compensation to the extent of the insured's injury, subject to the insured's policy limits. It is an umbrella coverage that does not require the insurer to pay to its insured the amount of the tort-feasor's bodily injury policy limits, as those limits pertain to the in-

---

**5.** I recognize that *Ex parte State Farm* involved a mistaken overpayment of UIM benefits, which did not occur in this case, but the supreme court set out exactly how attorney's fees are calculated in cases in which an insured obtains a judgment exceeding the combined policy limits of the tortfeasor's automobile-liability insurance and the UIM insurance. Hence, I find that opinion authoritative on this point.

sured. Therefore, *the insurer has no right to subrogation insofar as the tort-feasor's limits of liability are concerned. Its right of subrogation would be for sums paid by the insurer in excess of the tort-feasor's limits of liability.'* "

*Lambert,* 576 So.2d at 165 (quoting *Hardy v. Progressive Ins. Co.,* 531 So.2d 885, 887 (Ala.1988)) (emphasis added); *see also Star Freight, Inc. v. Sheffield,* 587 So.2d 946, 955 (Ala.1991) (explaining that, under *Hardy,* "an underinsured motorist insurance carrier had no right of subrogation as to payments that were within a tort-feasor's limits of liability, but did have a right of subrogation for sums paid by the insurer in excess of the tort-feasor's limits of liability").

This court then holds in *Eiland* that the common-fund doctrine applies when one party, through active litigation, creates, reserves, or increases a fund "in which more than one party has, at the outset of the controversy, *a potential interest."* 854 So.2d at 1137 (emphasis added). However, in a *Lambert* situation, the insured has no interest, potential or otherwise, in the recovery of the tortfeasor's automobile-liability-insurance-policy limits. As explained in *River Gas Corp. v. Sutton,* 701 So.2d 35, 39 (Ala.Civ.App.1997), a *Lambert* payment acts as a substitute for the tortfeasor's automobile-liability-insurance-policy limits. The insured has already been "guaranteed" that payment through the *Lambert* procedure. *Lambert,* 576 So.2d at 166. In a *Lambert* situation, the insured prosecutes a civil action against the tortfeasor solely to obtain UIM benefits from its own UIM insurer and additional damages against the tortfeasor. An insured must recover a judgment exceeding the *Lambert*

payment in order to create a fund to which he or she has any interest at all.

Furthermore, in *Eiland,* this court erred in considering that an insured's attorney acts for the benefit of the UIM carrier when recovering a judgment against the tortfeasor. In prosecuting a civil action against a tortfeasor, the insured is, in actuality, attempting to fix the liability of the tortfeasor and the measure of the insured's damages primarily to establish the insured's right to UIM benefits, which is, obviously, directly against the interests of the UIM carrier. As our supreme court noted in *Driver v. National Security Fire & Casualty Co.,* 658 So.2d 390, 395 (Ala. 1995), when a UIM insurer opts out of the litigation under *Lowe v. Nationwide Insurance Co.,* 521 So.2d 1309 (Ala.1988), as State Farm did in this case, *it is the attorney for the tortfeasor, not the attorney for the insured,* who defends the interests of the UIM carrier by acting to limit the damages awarded.[6] *See also Ex parte Littrell,* 73 So.3d 1213 (Ala.2011) (relying on *Driver* to hold that a UIM carrier has no right to retain additional counsel to represent a tortfeasor because its interests are protected by counsel for the tortfeasor furnished by tortfeasor's automobile-liability insurer); and *Miller v. Thompson,* 844 So.2d 1229, 1235 (Ala.Civ.App.2002) (construing *Driver* as holding that a UIM carrier's interests "will be protected by the attorney for the underinsured motorist's carrier"). Throughout the litigation, the attorney for the insured remains in an adversarial relationship to the UIM carrier.

"[I]f the attorney is simply acting on behalf of his or her client, and a benefit only incidentally comes to others, the

---

**6.** For that reason, perhaps an argument could be made that a UIM insurer that opts out should, in fairness, pay the defense costs of the tortfeasor, *but see Miller, infra* (rejecting that argument), but, in no event, should a UIM carrier be forced to pay the attorney's fees of its insured who is actually pursuing a claim *against* the UIM carrier.

attorney is not entitled to a fee from those receiving the incidental benefit. . . . In this regard, a benefit can be an incidental, rather than an intended, result of an attorney's efforts, if the relationship between the attorney and the 'nonclient' person receiving the benefit is an adversarial one."

*CNA Ins. Cos. v. Johnson Galleries of Opelika, Inc.,* 639 So.2d 1355, 1359 (Ala. 1994).

Finally, I disagree with *Eiland* and *Mathews v. Bankers Life & Casualty Co.,* 690 F.Supp. 984, 987 (M.D.Ala.1988), to the extent that they imply that it would be unfair to the insured's attorney not to impose an attorney's fee. In a *Lambert* situation, the attorney is entitled to a fee on the *Lambert* payment. To award the attorney an additional fee for recovering the same payment from the tortfeasor actually amounts to a double recovery for the attorney. For example, in this case, Pritchard's attorneys received attorney's fees of 33 1/3% on the $50,000 advanced by State Farm before the litigation. After the litigation, Pritchard's attorneys received additional attorney's fees of 40% on the $50,000 GEICO paid. Although Pritchard did not receive any additional benefit, his attorneys received an additional $20,000 on what is essentially the same $50,000.

Finally, I note that, in the typical insurance-subrogation case, the attorney-fee award is justified on the theory that the repayment from the common fund decreases the liability of the insurer. *See, e.g., Government Emps. Ins. Co. v. Capulli,* 859 So.2d 1115, 1119 (Ala.Civ.App.2002). Thus, if State Farm would have owed Pritchard $150,000, but its liability was reduced to $100,000 based on the $50,000 recovered from GEICO, then the trial court would have been correct in awarding the additional $20,000 fee. However, by following the advance-payment procedure

established in *Lambert* and fronting Pritchard $50,000, State Farm did not thereby incur any liability for an additional $50,000 beyond its policy limits. In no event would State Farm have ever been liable for $150,000 in this case under *Lambert* or any other legal authority. In fact, State Farm has a contractual obligation only to pay Pritchard up to $100,000, its UIM policy limits. The trial court's judgment requires State Farm to pay not only the $100,000, but an additional $20,000 beyond its UIM policy limits. The $20,000 does not come out of any common fund to which State Farm has access, but comes directly from State Farm; thus, the award of attorney's fees actually increases State Farm's liability to Pritchard. I have not located any case in which any court has determined that the common-fund doctrine should apply to increase the liability of a party.

In summary, State Farm was not subrogated to Pritchard's right to recover $50,000 from GEICO and, therefore, the proceeds of the GEICO policy cannot be considered a subrogation fund benefiting State Farm and from which it must pay attorney's fees. Moreover, Pritchard's attorneys, in prosecuting the action against McCants, did not act to protect any interest of State Farm, but assumed an adversarial position to State Farm. In obtaining the $400,000 judgment, Pritchard's attorneys directly served Pritchard's interest in collecting UIM benefits from State Farm, and their actions only incidentally benefited State Farm. In the end, Pritchard's attorneys should have recovered fees based solely on the $150,000 inuring to the benefit of Pritchard; instead, they received an additional $20,000 windfall at the increased expense of State Farm. In my opinion, the judgment ordering State Farm to pay Pritchard's attorneys $20,000 cannot be justified under the common-fund

doctrine or any other legal or equitable theory. Therefore, I believe the judgment is due to be reversed.